**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lee HITOW (88–1970); David Long
(88–2033), Defendants–Appellants.**

**Nos. 88–1970, 88–2033.**

United States Court of Appeals,
Sixth Circuit.

Argued July 27, 1989.

Decided Nov. 28, 1989.

**1576**

John A. Smietanka, U.S. Atty., John C. Bruha (argued), Grand Rapids, Mich., for U.S.

Kenneth M. Mogill (argued), Detroit, Mich., for Hitow.

Larry C. Willey (argued), Grand Rapids, Mich., for Long.

Before WELLFORD and RYAN, Circuit Judges, and CONTIE, Senior Circuit Judge.

WELLFORD, Circuit Judge.

Lee Hitow and David Long appeal their convictions for participation in a large conspiracy to distribute marijuana. *See also United States v. Lochmondy and Ludlow*, Nos. 88–2049/2134; *United States v. Arnold*, No. 88–2133. We affirm.

## I.

In the spring of 1983, Dennis Erikson invested $150,000 in a load of marijuana that was to be brought to the United States from Colombia. Erikson decided that he wanted to obtain part of the load and began making preparations to receive some of the marijuana. He arranged storage sites for the marijuana and spoke with various individuals concerning the shipment. One such conversation was with appellant David Long. Erikson telephoned Long, with whom he had dealt on a previous load of marijuana in February 1983, and told him that Long could have "as much [of the marijuana] as he could do."

Erikson went to Atlantic City, New Jersey, in August 1983 to await the arrival of the marijuana. He arranged for a semi-truck to drive the marijuana from Atlantic City to the Kalamazoo, Michigan area. After its arrival in Atlantic City, the marijuana was loaded into the truck, Erikson paid a $1,000,000 down payment, and the marijuana was then driven to the home of codefendant Willis Canter in Galesburg, Michigan, near Kalamazoo.

When the truck arrived at Canter's address, it got stuck in the driveway and almost tipped over. A tow truck was called to free the semi, which was then taken to a storage site at the farm of Casey Plantefaber near Three Rivers, Michigan (the Buckhorn Farm). The marijuana was unloaded, weighed, and put into a pole barn. Its total weight was 43,000 pounds, including packaging.

On the following day, Erikson and Stephen Powell, who had agreed to distribute some of the load, began delivering van loads of marijuana to Canter's house for distribution by codefendants Kim Arnold and Canter on consignment. On one of these trips, Erikson was approached by appellant Lee Hitow, who asked to purchase the rest of the load. Although Hitow did not receive the rest of the load, Powell was told by Canter that Hitow received approximately 1800 pounds of marijuana from the shipment. Powell observed Hitow loading or unloading marijuana at Canter's address at least twice. Hitow was also seen there by other coconspirators when marijuana was being picked up and payments were being made.

Erikson notified Long of the marijuana's arrival and accompanied him to Buckhorn Farm. Long apparently was one of the few persons allowed to go directly to the storage site at Buckhorn Farm to obtain marijuana. He obtained at least two pickup loads of marijuana there, which he purchased on consignment from Erikson. Long did not pay Erikson for all the marijuana he obtained.

Some of the marijuana was of poor quality and was returned by various customers. Stephen Powell took some of the marijuana from Canter's home to the home of codefendant Michael Roberts. When Powell went to the Canter address to make this pickup, he observed Hitow and another defendant putting returned marijuana into the truck that Powell was to take to Roberts' house. This marijuana was ultimately

returned to the East Coast sources by another conspirator.

## II.

In March 1988, a federal grand jury returned a three-count indictment against appellants Long and Hitow and 15 other defendants. Count 1 of the indictment charged all of the defendants with conspiracy to possess with intent to distribute in excess of 1,000 pounds of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1). Count 2 charged all of the defendants with possession with intent to distribute and distribution of over 1,000 pounds of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

The district court divided the defendants into two groups for trial. The first group included appellants Long and Hitow and three other defendants. On July 28, 1988, the jury returned verdicts of guilty against Hitow and Long. Hitow was found guilty on both Counts 1 and 2. Long was found guilty on Count 1 and the lesser-included offense in Count 2 of possession with intent to distribute less than 1,000 pounds of marijuana.

## III.

### 1. *Sufficiency of the Evidence*

■ Both appellants contend that the evidence was insufficient to convict them on Count 1, which charged them with conspiracy to possess with intent to distribute and distribution of in excess of 1,000 pounds of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1). The elements of this offense are: (1) that the defendants entered into an agreement to possess with intent to distribute and/or distribution of in excess of 1,000 pounds of marijuana, (2) that they did so willingly, and (3) that one of the conspirators knowingly committed at least one overt act in furtherance of the conspiracy. *United States v. Meyers*, 646 F.2d 1142 (6th Cir.1981).

■ No formal or express agreement is required. The agreement may be inferred from the acts done in furtherance of the conspiracy. *Direct Sales Co. v. United States*, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943); *Poliafico v. United States*, 237 F.2d 97 (6th Cir.1956). Once the existence of the conspiracy is proven, only slight evidence is necessary to connect a defendant with the conspiracy. *United States v. Mayes*, 512 F.2d 637, 647 (6th Cir.), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975). It is only necessary that a defendant know of the object of the conspiracy, associate himself with it, and knowingly contribute his efforts in its furtherance. *United States v. Grunsfeld*, 558 F.2d 1231 (6th Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 219, 54 L.Ed.2d 152 (1977).

■ The government's position is that both appellants were part of a "chain" conspiracy to distribute the load of marijuana. In "chain" conspiracies, the agreement can be inferred from the interdependent nature of the criminal enterprise. *United States v. Warner*, 690 F.2d 545, 549 (6th Cir.1982). It can be assumed that participants understand they are participating in a joint enterprise because success is dependent on the success of those from whom they buy and to whom they sell. *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir.1986).

■ The key element of a chain conspiracy is knowledge of a large operation. *United States v. McLernon*, 746 F.2d 1098, 1107–08 (6th Cir.1984). This element may be satisfied by proof of actual knowledge or proof of participation in a transaction from which such knowledge may be inferred. *United States v. Watson*, 594 F.2d 1330, 1337 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). Knowledge may be inferred from the interrelated nature of the drug business or the volume of drugs involved. *Grunsfeld*, 558 F.2d at 1235.

In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the government, and all reasonable inferences must be drawn in the government's favor. *United States v. Tilton*, 714 F.2d 642, 645 (6th Cir.1983) (per curiam). If the evidence is sufficient to justify a reasonable juror's

conclusion that each element of the offense has been established beyond a reasonable doubt, the convictions will be affirmed. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The government presented extensive evidence at trial against Long both as to Counts 1 and 2. Long had advance knowledge of the shipment of marijuana. Erikson testified that he had dealt with Long on a previous load of marijuana in February 1983, and contacted Long to inform him that another load was coming into the United States. Long indicated that he wanted part of the marijuana. Erikson told Long that he would have access to the marijuana and that he "could have as much as he could do." After the arrival of the marijuana, Erikson met with Long and escorted him to Buckhorn Farm to pick up marijuana. Erikson testified that Long obtained at least two pickup loads of marijuana, but was unaware of the exact weight. Erikson further testified that Long purchased the marijuana on consignment.

Appellant Long contends that while this evidence may have been sufficient to prove his involvement in a smaller conspiracy to possess with intent to distribute *less* than 1,000 pounds of marijuana, it was insufficient to prove his involvement in the larger "chain" alleged in Count 1. Long contends that he was "indifferent" to the larger conspiracy, citing *United States v. Glenn*, 828 F.2d 855 (1st Cir.1987). We are satisfied that the evidence is sufficient to prove that Long was involved in the larger conspiracy. Long had advance knowledge of the sizeable load of marijuana and was told by Erikson that he could have "all he could do." Long's subsequent actions indicate his willingness to participate in distribution of the larger load. He obtained at least two pickup loads of marijuana (totalling approximately 1,000 pounds) and knew that more marijuana was available to him if he wished to have it. His liability is determined, not by how much he actually obtained, but by the scope of his knowledge and agreement. *United States v. Richards*, 737 F.2d 1307, 1309 (7th Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779,

83 L.Ed.2d 774 (1985). A reasonable jury, on the basis of this evidence, could find that Long knew he was participating in a larger venture. The evidence thus showed the type of interdependence necessary for a proper application of the "chain" conspiracy principle.

The evidence is also sufficient to sustain the conviction of appellant Hitow on Count 1. Powell testified that Hitow was present during discussions about the load of marijuana, and Erikson testified that on one of his trips to the Canter home to deliver marijuana, Hitow approached him expressing an interest in obtaining the rest of the marijuana. Powell further testified that he observed Hitow at least twice loading or unloading marijuana, and was told by Canter that Hitow received approximately 1800 pounds from this load. Frederick Schmalfaldt testified that he saw Hitow at Canter's house when Schmalfaldt was picking up marijuana and making a payment. Schmalfaldt's wife testified that Hitow was present when she went to the Canter home to make a marijuana payment. In addition, there are two recorded telephone calls from Powell's house to Hitow's house prior to and during the marijuana transactions.

Hitow argues that the evidence establishes only a buyer-seller relationship as to him and was insufficient to establish his knowledge of, and participation in, the larger conspiracy. In *Grunsfeld*, this court ruled that evidence of credit sales and purchases of a large volume of drugs creates an inference of an on-going relationship with the conspiracy. 558 F.2d at 1235. In this case, there is considerable evidence beyond the mere purchase of drugs from which defendant Hitow's knowledge of the larger conspiracy could be inferred by a reasonable jury. Not only was he present during conversations about the load, he asked to purchase the remainder of the load. We find this evidence sufficient to sustain Hitow's conviction on Count 1.

*2. Admissibility of Prior Transaction*

Long also objects to the introduction of evidence that he had purchased

several thousand pounds of marijuana from Erikson in February 1983. The purpose of this evidence was to explain the context of the "all he could do" statement and to demonstrate the scope of the agreement with Long. The government's position was that the phrase "all he could do" indicated a large amount (*i.e.*, over 1,000 pounds) of marijuana since Long had in February handled several thousand pounds of marijuana from a previous load and that this evidence was relevant to show the scope of Long's agreement and the background of this conspiracy.

The district court took the issue under advisement and gave the parties an opportunity to submit briefs. The following day, the court ruled that it would exclude evidence of the *quantity* of marijuana Long obtained from the prior load under FRE 403, but would admit evidence of Long's prior transaction with Erikson to establish the background and development of the conspiracy, the existence of an on-going plan or scheme, and Long's knowledge of an intent to commit the crimes alleged in the indictment.

In order to be admissible under FRE 404(b), the evidence must be offered for a proper purpose and the probative value of the evidence must outweigh its potential prejudicial effect. *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); *United States v. Hatfield*, 815 F.2d 1068, 1072 (6th Cir.1987). In *United States v. Passarella*, 788 F.2d 377 (6th Cir.1986), this court found similar evidence admissible for the "legitimate purpose of showing the background and development of a conspiracy." *Id.* at 383. Similarly, the evidence of Long's prior dealing with Erikson was admitted for the purpose of showing his "knowledgeable participation" in the conspiracy alleged in Count 1.

It is well settled that a trial judge's discretion in balancing the probative value of evidence against its potential for unfair prejudice is very broad. *United States v. Dabish*, 708 F.2d 240, 243 (6th Cir.1983). In view of its evident probative value in explaining the "all he could do" statement,

the district court does not appear to have abused its discretion in admitting this evidence to show the background and development of the conspiracy and Long's knowledgeable participation in the conspiracy. We are not persuaded by Long's argument that the only purpose of this testimony was to establish his criminal propensity for a bad character, and find no error in this regard. At worst, admission of this evidence would constitute harmless error in light of other persuasive evidence showing Long's dealings with Erikson and his participation in the conspiracy alleged in Count 1.

### 3. *Prosecutorial Remarks*

Appellant Long contends that several remarks made by the prosecutor during rebuttal deprived him of a fair trial. The contested remarks included a comment about defendant Long "looking like the boy next door," made in response to a comment his counsel made about the government's chief witness, Dennis Erikson; a statement that defendant Long was one of the few people permitted to go to Buckhorn Farm where the marijuana was being stored; and a remark, in response to defense counsel's skepticism about Dennis Erikson's statement that he wanted to pay his taxes, that Al Capone was convicted on income tax violations rather than bootlegging.

The Supreme Court has stated:
A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be reviewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.

*United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). Even if certain comments are found to be inappropriate, they alone would not justify a reversal of a criminal conviction obtained in an otherwise fair proceeding. *Id.* at 11–12, 105 S.Ct. at 1044–45. Rather, the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. *Id.* In order to warrant a new trial, prosecuto-

rial misconduct "must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Mahar*, 801 F.2d 1477, 1503 (6th Cir.1986).

■ During his rebuttal argument, the prosecutor responded to an attack on the credibility of the government's chief witness, Dennis Erikson. The prosecution stated:

> Mr. Willey asked you to look at one of the defense exhibits, ladies and gentlemen, that has Mr. Erikson's smiling face on a Newsweek card, that somehow, ladies and gentlemen, that detracts from Mr. Erikson's credibility.
>
> I ask you, ladies and gentlemen, to look over at Mr. Long who sits there at the defense table looking like the boy next door. But I submit the evidence shows, ladies and gentlemen, that he is a drug dealer, that he participated in this load just like Mr. Pierman and Mr. Erikson recalled that he did.

Long argues on appeal that this statement was tantamount to a comment on Long's refusal to testify. Defense counsel made no objection on this point at trial, so we review the trial court's admission of this statement under principles of "plain error."

Appellant Long asserts that this comment constituted an indirect reference on his failure to testify. This court has reviewed such alleged "indirect" comments by asking whether they were "manifestly intended" to reflect the accused's silence or were of such a character that the jury would "naturally and necessarily" take them as such. *Mahar*, 801 F.2d at 1503; *Spalla v. Foltz*, 788 F.2d 400, 404 (6th Cir.1986).

We believe the record shows that the contested comment was not "manifestly intended" as a comment on Long's silence. The "boy next door" comment was probably in response to defense counsel's "smiling face" remark. It would require a true stretch of the imagination to conclude that the remark was intended as a reference to the defendant's failure to testify. Manifest intent will not be found "if some other explanation for the remark is equally plausible." *Steele v. Taylor*, 684 F.2d 1193,

1204 (6th Cir.1982), *cert. denied*, 460 U.S. 1053, 103 S.Ct. 1501, 75 L.Ed.2d 932 (1983). Under this standard, admission of the contested statement certainly does not constitute plain error.

Long also objects to the prosecutor's reference to notes of the court reporter on an alleged discrepancy between the testimony of Dennis Erikson and another witness about the two loads of marijuana they said Long obtained. Defense counsel objected to the reference to the notes. The court overruled the objection, but instructed the jury that it was *their* recollection, not the lawyer's recollection, that controlled. The appellant contends that this argument was "factually" in error, constituted a reference to extrinsic evidence, and suggested that government counsel was deliberately trying to mislead the jury.

■ A prosecutor's statement that defense counsel's characterization of the evidence was incorrect is not necessarily improper. *United States v. Buishas*, 791 F.2d 1310, 1317 (7th Cir.1986). The record shows that the prosecutor correctly stated the testimony to the jury and that the defense counsel's statement was incorrect. Thus, the prosecutor's references to the government's and the court reporter's notes were not prejudicial. *See United States v. Guess*, 745 F.2d 1286, 1288 (9th Cir.1984), *cert. denied*, 469 U.S. 1225, 105 S.Ct. 1219, 84 L.Ed.2d 360 (1985).

■ Long's final complaint concerns the prosecution's reference to Al Capone. Dennis Erikson was cross-examined at length about false statements on his income tax returns and his failure to pay taxes on his drug income. During his closing argument, counsel for defendant Long expressed skepticism about Erikson's statement that "[i]f only I could, if only my accountant would let me I would love to pay income tax." In response, the prosecution stated:

> Ladies and gentlemen ... if your standard of living is higher than what you are showing on your income tax returns, you may be drawing attention to yourself. And drug dealers don't want to

draw attention to themselves. And if you recall, ladies and gentlemen, the case of Al Capone, they didn't really get Al Capone on Prohibition charges. They got Al Capone on income tax.

Defense counsel objected to the reference to Al Capone, but the court did not think it was harmful and overruled the objection.

While we disapprove of the prosecutor's reference to Al Capone, when read in context, the prosecution's statement did not actually compare defendant Long with the notorious gangster, and was not unfairly prejudicial.

4. *Admissibility of Testimony That Hitow Received 1800 Pounds of Marijuana*

Appellant Hitow contends that the district court improperly admitted testimony under FRE 801(d)(2)(E) that he received approximately 1800 pounds of marijuana from the load. Powell testified, without objection by the defendant, that he believed Hitow received around 1800 pounds. On cross-examination, Powell acknowledged that he did not have personal knowledge as to the exact quantity. On redirect, after testifying that he had an interest in people down the distribution chain paying for their marijuana so that he would be paid, he was allowed to testify, over objection, that Canter told him Hitow had obtained 1800 pounds of marijuana. Counsel for the defendant objected that this statement would not be "in furtherance of" the alleged conspiracy, which objection was overruled.

Hitow argues that it was improper to admit this testimony under FRE 801(d)(2)(E) because there was insufficient evidence to connect him with the alleged conspiracy and the statement was not "in furtherance of" the conspiracy. Since this was the only evidence that he received over 1,000 pounds of marijuana, he argues that his conviction on Count 2 must be reversed.

■■■■ In order to establish a foundation for admissibility of statements under 801(d)(2)(E), the government must demonstrate: (1) that a conspiracy existed, (2) that the defendant against whom the statement is offered was a member of the con-

spiracy, and (3) that the statement was made in the course of and in furtherance of the conspiracy. *United States v. Vinson,* 606 F.2d 149 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). If it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible.

■■■■ A statement is made "in furtherance of" the conspiracy if it was intended to promote the conspiratorial objectives. *United States v. Hamilton,* 689 F.2d 1262, 1270 (6th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983). It need not actually further the conspiracy to be admissible. *Id.* Where the admissibility of coconspirators' statements presents a very close call, the district court's findings generally should not be disturbed. *Id.* at 1270–71.

Statements that have been found to be "in furtherance of" conspiracies include statements identifying other conspirators and their roles in the conspiracy, *United States v. Magee,* 821 F.2d 234, 244 (5th Cir.1987), statements to inform other conspirators of the activities or status of the conspiracy, *United States v. Rios,* 842 F.2d 868, 874 (6th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989), and statements as to the source or purchaser of controlled substances, *United States v. Patton,* 594 F.2d 444, 447 (5th Cir.1979).

■■■■ In this case, Powell testified that he sold most of his share of the marijuana to Kim Arnold and Willis Canter on consignment; that he was interested in getting paid for that marijuana; that he had an interest in people down the distribution chain paying for the marijuana so that he could get paid; and that he had an interest in knowing how much marijuana was being sold. Canter's statement to Powell that Hitow obtained 1800 pounds of marijuana was arguably in furtherance of the conspiracy because it informed Powell who was purchasing the marijuana and in what

quantity. It identified Hitow's participation and role in the conspiracy, *see United States v. Magee*, it informed Powell as to the activity and status of the conspiracy, *see United States v. Rios*, and it informed Powell who was purchasing the marijuana, *see United States v. Patton*. According to these principles, we hold that the district court did not abuse its discretion in admitting the contested statement under FRE 801(d)(2)(E).

### 5. *Hitow's Entitlement to Resentencing*

Appellant Hitow objected to information in the presentence report to the effect that he had been a source of cocaine for employees at the Hilton Inn in Kalamazoo, Michigan. The report stated:

> An investigation conducted by the security department at the Hilton Inn, Kalamazoo, Michigan, in November and December 1984, resulted in the identification of Mr. Hitow as the source of cocaine for a number of Hilton Inn employees. Charges were never filed.

Hitow denies this information and contends that it prejudiced his sentencing.

The government stood by this information at sentencing, but stipulated that it was unnecessary for the court to consider it for purposes of sentencing. The court responded to defense counsel's objection as follows:

> The government has agreed that the Court should not consider it, and the Court's resolution of that paragraph is the Court will not consider the comments about the Hilton Inn and, therefore, the objection is sustained.

The court later ordered the allegation deleted entirely. Hitow was sentenced to ten years in prison plus a $10,000 fine on Count 1, and a concurrent term of ten years in prison, plus a mandatory two-year special parole term on Count 2.

Hitow contends that subsequent remarks made by the court during the sentencing of codefendant Willis Canter indicate that, contrary to its express ruling, the sentencing court did take into consideration the cocaine allegation and that he is therefore entitled to resentencing. During the sentencing of Canter, the court made the following remark:

> And a credit should be due to you (Canter) in terms of the fact that you did not deal in cocaine. Neither did you take it as far as I know.... I have no indication that William Canter was a person that used cocaine or that William Canter trafficked in cocaine, as I do with other people, *including Lee Hitow*.

(Emphasis added).

Whether or not the information regarding his dealing in cocaine was correct, Hitow has not demonstrated that the disputed information was a factor in his sentence. In order to prevail on appeal, the appellant must show that the contested information is (1) false or unreliable, and (2) *demonstrably* made the basis for his sentence. *United States v. Fry*, 831 F.2d 664, 667–68 (6th Cir.1987). Mere awareness of prejudicial information by a trial judge does not taint the sentence if the information was not expressly relied on. *See United States v. Lee*, 648 F.2d 667, 669 (9th Cir.1981). In spite of the district court's statement concerning the different backgrounds of Canter and Hitow with regard to involvement in cocaine, both defendants received the same sentence. That fact alone would tend to confirm the district court's assurance that it was not considering the allegations of Hitow's past involvement with cocaine in fixing a sentence. Thus, even if the district court did believe that Hitow had been involved in cocaine previously, the record in no way shows that this contested information affected his sentence. Accordingly, Hitow is not entitled to resentencing on grounds of the disputed allegation.

Accordingly, the convictions and sentences of both appellants are hereby AFFIRMED.