19 F.3d 20
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lee J. KLEIN, Defendant-Appellant.
 No. 93-1575.
 United States Court of Appeals, Sixth Circuit.
 March 3, 1994.
 
 Before: BOGGS and SUHRHEINRICH, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Lee J. Klein was convicted of conspiracy to defraud the government by impeding the Internal Revenue Service, in violation of 18 U.S.C. Sec. 371. Klein appeals on the grounds that the evidence was insufficient to support the conviction, the district court's jury instructions were misleading, and the district court erred in allowing the government to introduce certain inter-office memoranda.
 
 
 2
 Because we find that the evidence was sufficient to support the jury's verdict and the district court did not err either in giving the jury instructions or in admitting the memoranda, we affirm Klein's conviction.
 
 
 3
 * Klein's conspiracy trial was a spin-off of an earlier trial, United States v. Mohney, 949 F.2d 899 (6th Cir.1991); 949 F.2d 1397 (6th Cir.1991), cert. denied, 112 S.Ct. 1940 (1992). Mohney ran an extensive adult entertainment business until he was convicted of tax fraud. Klein and Mohney first associated professionally in 1980 when the State of Michigan began an audit of Mohney's business holdings. The state's focus was the common ownership of several corporations that Mohney claimed were independent of his business. Mohney hired Klein to represent several of his corporations.
 
 
 4
 According to the evidence, Mohney made arrangement for Klein to remove thirty boxes of business records to the Bahamas. This transfer had the effect of preventing the auditor from reviewing the records. Also, during this audit, Klein produced stock certificates that allegedly proved that the businesses under investigation were held by independent corporations. At least one of these stock certificates, however, was held by a Panamanian corporation that was incorporated a full year after the state audit had begun.
 
 
 5
 In 1981, Klein became the in-house counsel for Modern Bookkeeping Services, the nerve center for Mohney's adult entertainment empire.[1] As in-house counsel, Klein acted as incorporator for several domestic corporations, was the exclusive agent for Mohney in dealing with off-shore corporations, and negotiated most of Mohney's purchases. In one instance, Klein facilitated a Mohney acquisition by arranging to purchase the property with off-shore funds. Klein had the funds wired from a Bahamian bank account to a West Coast law firm's trust account. The law firm then issued $500,000 to Klein's corporate account and Klein used most of the funds to pay the sellers.
 
 
 6
 As a tax attorney, Klein represented as many as 80 corporations that were part of Mohney's empire. The testimony at trial indicated that even though Klein was designated as the resident agent for the domestic corporations, the nominees of these corporations in many instances had no knowledge of the location or nature of the corporations. Klein, however, represented himself as an agent of the corporations and transacted business on their behalf. Also, both domestic and foreign corporations were used to conceal Mohney's interests and the true ownership of the corporations was further obfuscated by the filing of false or incomplete tax returns. Although Klein did not actually prepare tax returns, he was the accountants' main source for ownership information required by the Internal Revenue Service.[2] In response to the accountants' inter-office memoranda about disclosures of stock ownership, Klein initially indicated to the accountants that they should not disclose any information. As time wore on, the accountants stopped asking, and if one did ask about disclosures, Klein responded with sarcastic and unhelpful remarks.[3]
 
 
 7
 After a six-week trial, the jury convicted Klein of conspiring to defraud the government by impeding the Internal Revenue Service. The court sentenced Klein to sixty days in prison, four months of house arrest, two years of probation, and a $10,000 fine.
 
 II
 
 8
 Klein argues that the evidence was insufficient to prove that he knowingly participated in a criminal conspiracy. The standard of review for a claim of insufficiency of the evidence is " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979)).
 
 
 9
 When attempting to prove an individual's participation in a conspiracy, the prosecutor must first establish that a conspiracy existed. The elements necessary for proof of conspiracy under 18 U.S.C. Sec. 371 are:
 
 
 10
 (1) that the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged.
 
 
 11
 United States v. Sturman, 951 F.2d 1466, 1474 (6th Cir.1991), cert. denied, 112 S.Ct. 2964 (1992).
 
 
 12
 "No formal or express agreement is required. The agreement may be inferred from the acts done in furtherance of the conspiracy." United States v. Hitow, 889 F.2d 1573, 1577 (6th Cir.1989). Once the government proves that a conspiracy existed, the defendant's "connection to the conspiracy must be shown beyond a reasonable doubt, but the importance of the connection need not be great." United States v. Betancourt, 838 F.2d 168, 174 (6th Cir.), cert. denied, 486 U.S. 1013, 108 S.Ct. 1748 (1988).
 
 
 13
 In Sturman, supra, the court upheld a conspiracy conviction in a case similar to Klein's. In that case, Sturman, who managed a branch of his father's pornography business, was charged with conspiring to defraud the government by impeding the Internal Revenue Service. Beginning in the 1960's, Sturman's father set up 150 domestic corporations and five foreign corporations. The names of the shareholders and nominees in these corporations were often fictitious; Sturman's father was in fact the beneficial owner of most of the corporations. The Sturman employees used the corporations to conceal income and they also skimmed money from peep booths. Sturman was convicted of conspiring to defraud the government. Sturman, 951 F.2d at 1471.
 
 
 14
 On appeal, he argued that the evidence was insufficient to support his conviction. The evidence against Sturman included Sturman's own admission that he "opened two Swiss accounts under assumed names, his signature authority over 20 additional accounts under the names of fictitious persons, his directorship at one of the corporations used to channel money from other businesses, and his failure to report his signature authority over Swiss accounts as required by law." The court concluded that this evidence was sufficient to support Sturman's conviction. Id. at 1474.
 
 
 15
 The evidence of Klein's guilt is at least as strong as the evidence in Sturman. The government established that Mohney was involved in tax fraud during the time Klein worked for him. See United States v. Mohney, 949 F.2d 1397 (6th Cir.1991). Klein also set up bank accounts in the names of fictitious persons for use by Mohney's corporations. As the resident agent for most of the corporations, Klein represented himself as acting with the "authorization" of nominees who, in reality, had no actual authority or knowledge of the matters in issue. Klein used untaxed money from off-shore accounts to purchase property for Mohney, and he repeatedly ignored the accountants' questions when they attempted to comply with federal tax laws. The government also proved that Klein's representation of Mohney during a 1980 state income tax audit materially advanced the object of the conspiracy by removing records from the United States.
 
 
 16
 This is just a small portion of the evidence presented by the government about Klein's involvement in Mohney's business. Klein argues, however, that each of these transactions was legal, and thus he cannot be convicted of merely making the Internal Revenue Service's job more difficult. However, as the First Circuit said in a similar case involving a conspiracy to defraud the government, "[t]he legitimacy of each transaction, on its own, is not the issue before us, however; the question is whether [the defendant] understood that these facially proper undertakings were part of a scheme to insulate ... money from the government." United States v. Hurley, 957 F.2d 1, 6 (1st Cir.), cert. denied, 113 S.Ct. 60 (1992).
 
 
 17
 This statement is a fair characterization of Klein's case. Most of Klein's transactions were legal, but the sheer number of the transactions coupled with his involvement in each one and his role as the "number two" person in Mohney's business give rise to an inference that Klein knowingly and willfully participated in a conspiracy to defraud the government by impeding the Internal Revenue Service. Cf. Hurley, 957 F.2d at 7 ("the confluence of factors ... permitted the jury to conclude that [the defendant] was fully aware of, and a full participant in, the underlying fraudulent scheme [to impede the Internal Revenue Service]"); United States v. Nivica, 887 F.2d 1110, 1114 (1st Cir.1989), cert. denied, 494 U.S. 1005, 110 S.Ct. 1300 (1990) ("defendant's involvement in the operations of the enterprise was so pervasive that his knowledge of its illegal nature became reasonably certain"). We find that the evidence was sufficient to support Klein's conviction.
 
 III
 
 18
 Klein objects to the judge's jury instruction on deliberate ignorance. " 'The standard on appeal for a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury.' " United States v. Brown, 946 F.2d 1191, 1194 (6th Cir.1991) (quoting United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984)).
 
 The judge charged the jury as follows:
 
 19
 No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that Defendant Klein deliberately ignored a high probability that the acts described in the indictment were part of a fraudulent scheme or that transactions were set up and handled so as to impede the Internal Revenue Service in the assessment and collection of taxes, then you may find that he knowingly participated in such activities.
 
 
 20
 But to find this, you must be convinced beyond a reasonable doubt that Defendant Klein was aware of a high probability that the acts described in the indictment were part of a fraudulent scheme to impede the Internal Revenue Service in the assessment and collection of taxes....
 
 
 21
 If you so find ... then you may find that he knowingly participated in such activities and that he deliberately closed his eyes to what was obvious.
 
 
 22
 Carelessness or negligence or foolishness on his part is not the same as knowledge and is not enough to convict.
 
 
 23
 The Sixth Circuit has stated that similar instructions are proper as long as they make clear that a conviction based on simple negligence is impermissible. United States v. Lawson, 780 F.2d 535, 542 (6th Cir.1985); United States v. Holloway, 731 F.2d 378, 380-81 (6th Cir.), cert. denied, 469 U.S. 1021, 105 S.Ct. 440 (1984); United States v. Gullett, 713 F.2d 1203, 1212 (6th Cir.1983), cert. denied, 464 U.S. 1069, 104 S.Ct. 973 (1984).
 
 
 24
 Klein, however, contends that the "deliberate ignorance" instruction was reversible error since there was no evidence that Klein was "on notice" that Mohney was involved in criminal activities. As noted above, there was evidence that Klein knew as early as 1980 that Mohney's business arrangements were not completely legitimate. Moreover, the judge's instructions warned the jury that they needed to find that Klein ignored a "high probability" that criminal activity was afoot. Consequently, the instruction as a whole adequately submitted the issues and applicable law to the jury.
 
 
 25
 Klein also argues that the "deliberate ignorance" instruction was reversible error, especially when coupled with the prosecutor's statement in closing arguments that Klein "should have known" that criminal activity was afoot "because he was there." Since Klein did not object to the prosecutor's remark, his claim is reviewed under the "plain error" standard. Plain errors are those that are "so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial." United States v. Causey, 834 F.2d 1277, 1281 (6th Cir.1987), cert. denied, 486 U.S. 1034, 108 S.Ct. 2019 (1988).
 
 
 26
 As the government admits, the prosecutor's remark was inappropriate since it points to a "negligence" type standard for conviction on the conspiracy charge. The statement, however, was an isolated remark and, at the close of his argument, the prosecutor admonished the jury that "[n]o one from the Government has ever asked you, nor will they, to convict someone for their associations." Furthermore, the judge warned the jurors about applying the very standard that the prosecutor mentioned in his closing statement. Since the remark was isolated, the judge gave proper instructions on the issue, and the prosecutor restated the proper standard at the end of his closing argument, the prosecutor's remark does not rise to the level of plain error.
 
 IV
 
 27
 Klein also appeals the district court's admission of alleged hearsay statements. The evidence in issue consists of inter-office memoranda from Mohney's accountants to Klein and Klein's responses. As noted above, the accountants asked Klein, via inter-office memoranda, what disclosures they should make about ownership on different corporate income tax returns.
 
 
 28
 Klein's argument lacks merit for several reasons. First, the accountants' questions in the memoranda are not hearsay since they were not admitted to prove the truth of the matter asserted. Rather the government introduced the memoranda to indicate Klein's involvement in Mohney's tax planning. See United States v. Gibson, 675 F.2d 825, 833-34 (6th Cir.), cert. denied, 459 U.S. 972, 103 S.Ct. 305 (1982) (statements offered merely to show that they were made are not hearsay). Moreover, any comment by Klein is non-hearsay under the party-opponent rule. Fed.R.Evid. 801(d)(2)(A). Finally, since the district court found by a preponderance of the evidence that a conspiracy existed, the statements were admissible under the co-conspirator exception to the hearsay rule. Fed.R.Evid. 801(d)(2)(E). Consequently, the district court did not err in allowing the government to introduce the inter-office memoranda.
 
 
 29
 Klein's conviction for conspiring to defraud the government by impeding the Internal Revenue Service is AFFIRMED.
 
 
 
 [1]
 On paper, Modern Bookkeeping Services did not own anything. Rather, it provided bookkeeping services for "the separately incorporated adult-entertainment locations."
 
 
 [2]
 During this time, federal income tax laws required corporations to disclose any individual, partnership, corporation, estate, or trust that directly or indirectly owned 50% or more of a corporation's voting stock
 
 
 [3]
 For example, in 1983, when Tompkins asked about shareholder information, Klein responded "What about them? Are they cute? Please advise." When another accountant asked Klein who the shareholders were for another corporation, Klein responded, "The Lennon Sisters."