19 F.3d 20
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leroy POOLE and Jonathan Sims, Defendants-Appellants.
 Nos. 93-1500, 93-1505.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1994.
 
 Before: MARTIN and BATCHELDER, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Leroy Poole and Jonathan Sims appeal their convictions by a jury on charges of conspiring to distribute and distribution of fifty grams or more of cocaine base. Poole challenges the district court's admission, under the coconspirator exception to the hearsay rule, of statements made by Sims and contends that there was insufficient evidence to support his conviction. Sims maintains that the trial court erred in denying his motion for a mistrial and argues that the sentencing scheme is unconstitutional because it treats crack cocaine more harshly than powder cocaine. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 On July 9, 1992, a Drug Enforcement Administration informant named Daniel Tapert called Sims from the DEA office in Detroit, Michigan. During the conversation, Tapert arranged to meet Sims at a gas station in Detroit that afternoon to purchase six ounces of crack. Before allowing Tapert to keep his appointment, the DEA agents searched both Tapert and his car, and equipped Tapert with a transmitting device that allowed the agents to monitor and record his conversations.
 
 
 3
 At about 3:30 p.m., Tapert pulled into the parking lot of the Amoco station at the intersection of Harper and Chalmers Streets. DEA Agents Yasenchak and Sarhatt parked out of sight behind the station, while DEA Agent Buckel parked in a position across the street that provided him with a largely unobstructed view of the area. A few minutes later, Sims drove into the parking lot in a 1983 Ford Thunderbird. Sims' brother, Shawntel, was sitting in the passenger seat. After informing Tapert that the drugs were on the way, Jonathan Sims began looking up and down the street.
 
 
 4
 Shortly thereafter, Sims indicated that his "boy" had arrived. At the same time, the agents observed a Buick Regal drive past the gas station. Poole, the Buick's driver, parked the car on a side street approximately one block from the gas station. He and a passenger, Noel Grady, then got out of the Buick and met Sims on the sidewalk. After a brief conversation, Poole returned to his car and reached inside through the open driver's side window. Poole then rejoined Sims and Grady on the sidewalk, and the three men began to walk toward the Amoco station. Agent Buckel was unable to see whether Poole had retrieved an object from the car and did not observe Poole hand anything to Sims.
 
 
 5
 When the three men arrived at the gas station, Poole went inside the station, Grady stood in the parking lot, and Sims got into Tapert's car. After Sims gave the crack to Tapert, Tapert got out of his car and gave a prearranged arrest signal. As the DEA agents converged on the gas station, Poole and Sims attempted to flee. Poole, Grady, Jonathan Sims, and Shawntel Sims were quickly apprehended and placed under arrest.
 
 
 6
 On October 28, a federal grand jury returned a superseding indictment against Jonathan Sims, Poole, and Grady, charging them with conspiracy to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. Secs. 841, 846, and distribution or aiding and abetting the distribution of fifty grams or more of cocaine base, in violation of 21 U.S.C. Sec. 841 and 18 U.S.C. Sec. 2. Following a two-day trial, the jury convicted Sims and Poole of both charges, but completely acquitted Grady. On March 31, 1993, the district court sentenced both Sims and Poole to 121-month terms of incarceration, to be followed by five years of supervised release. This timely appeal followed.
 
 
 7
 Initially, Poole alleges that the district court erred by admitting tape-recorded conversations between Sims and Tapert into evidence against Poole under Federal Rule of Evidence 801(d)(2)(E). Rule 801(d)(2)(E) provides that a "statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. To establish a foundation for admissibility of such statements, the government must demonstrate "(1) that a conspiracy existed, (2) that the defendant against whom the statement is offered was a member of the conspiracy, and (3) that the statement was made in the course of and in furtherance of the conspiracy." United States v. Hitow, 889 F.2d 1573, 1581 (6th Cir.1989). These factual findings are left to the trial court's sound discretion and are reviewed only for clear error. United States v. Perez, 871 F.2d 45, 48 (6th Cir.), cert. denied, 492 U.S. 910 (1989).
 
 
 8
 The district court's admission of the Sims-Tapert statements was not clearly erroneous. Sims' statements indicating that his "boy" would deliver the cocaine were corroborated by independent evidence. Poole showed up at the prearranged spot at the prearranged time. After conversing with Sims, Poole returned to his car and reached inside. Moments later, Poole rejoined Sims. The men then walked back to the Amoco and Sims delivered the crack to Tapert. On these facts, the government established both the existence of a conspiracy and Poole's participation in it. See Bourjaily v. United States, 483 U.S. 171, 175 (1987) (finding coconspirator statements admissible under closely analogous facts). Accordingly, Poole's contention that the statements were wrongfully admitted is without merit.
 
 
 9
 Poole also challenges the district court's denial of his motion for a judgment of acquittal, claiming that the evidence presented at trial was insufficient to sustain his conspiracy and aiding and abetting convictions. In reviewing the denial of a motion for acquittal, this Court has long recognized that we look only to whether after reviewing "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We are also mindful that "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984)).
 
 
 10
 Given this standard, Poole's sufficiency of the evidence argument must fail. Testimony at trial established that Sims agreed to sell six ounces of crack cocaine to Tapert. Upon arriving at the Amoco, Sims told Tapert that the drugs would be delivered by a separate courier. When Poole drove by the station minutes later, Sims commented that his "boy" had arrived and walked to meet Poole. The agents watched Poole talk with Sims, walk back to his car, and reach inside. Poole subsequently accompanied Sims to the station and stood nearby as Sims delivered the crack to Tapert. From these facts, the jury could reasonably infer that Poole was more than merely present at the scene of the offense. Compare United States v. Pearce, 912 F.2d 159, 162 (6th Cir.1990) (defendant's "mere presence in the house does not by itself demonstrate any tacit or mutual understanding between" codefendants), cert. denied, 498 U.S. 1093 (1991). Viewing all the evidence and the inferences that could be drawn from it in the light most favorable to the government, we conclude that there was sufficient evidence to support a finding that Poole conspired to distribute and aided and abetted the distribution of fifty grams or more of cocaine base.
 
 
 11
 Turning to Sims' assignments of error, we consider first whether the trial court abused its discretion in refusing to grant Sims' motion for a mistrial. On direct examination, DEA Agent Yasenchak testified that he had seized a gun from Sims' brother, Shawntel.[1] Sims claims that the mention of a handgun during his trial on drug charges had a "negative emotional impact" on the jury that was so prejudicial that Sims was unable to obtain a fair trial. We do not agree.
 
 
 12
 The decision whether to grant a mistrial generally rests within the sound discretion of the trial court. United States v. Phibbs, 999 F.2d 1053, 1066 (6th Cir.1993), cert. denied, 62 U.S.L.W. 3551 (1994). In determining whether a mistrial should have been granted on prejudicial statement grounds, this Court has considered a number of factors, including whether the government elicited or repeated the allegedly prejudicial statements, whether the defendants made a contemporaneous objection to the remarks, whether the statements constitute more than a small portion of the total trial testimony, and whether the remarks were made well before the start of the jury's deliberations. Id. at 1066-67.
 
 
 13
 Here, Agent Yasenchak's reference to the handgun was inadvertent and brief. While it came on direct examination, defense counsel did not move for a mistrial until the close of the government's case. The government never repeated the reference in later questions or argument. Under these circumstances, we cannot conclude that the statement had such a prejudicial effect on the jury's decision that it was an abuse of discretion to deny Sims' motion for a mistrial.
 
 
 14
 Finally, claiming that the cocaine-crack equivalency ratio--one hundred grams of cocaine equals one gram of crack for purposes of sentence severity--discriminates on the basis of race, Sims urges this panel to find both 18 U.S.C. Sec. 841 and the Sentencing Guidelines to be unconstitutional. This is an invitation we must decline. This Court "repeatedly has upheld the cocaine-crack equivalency against all manner of constitutional attack, including the claim of racial discrimination." United States v. Reece, 994 F.2d 277, 278 (6th Cir.1993) (collecting cases). As this panel is bound by the prior decisions of this Court, Sims' final claim must be rejected.
 
 
 15
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 The following colloquy took place between the prosecutor and Agent Yasenchak:
 Q: What did you do with Shawntel Sims after you placed him under arrest?
 A: After placing Shawntel Sims under arrest, I searched him and discovered a--handgun on his person, at which time, we handcuffed him and put him inside a DEA vehicle for transportation to the downtown DEA office. At that time, it was discovered that he was under--
 Joint Appendix at 259.