**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Norman DABISH, Defendant-Appellant.**

No. 82–1367.

United States Court of Appeals,
Sixth Circuit.

Argued April 12, 1983.

Decided June 3, 1983.
Rehearing and Rehearing En Banc
Denied July 25, 1983.

N.C. Deday LaRene (argued), Detroit, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Detroit, Mich., Kenneth A. Caruso (argued), U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before LIVELY and MARTIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PER CURIAM.

Norman Dabish appeals a jury conviction of interfering with commerce by means of extortion, a violation of the Hobbs Act, 18 U.S.C. § 1951(a). Dabish was tried on a two-count indictment. The first count alleged that Dabish "wrongfully used and

threatened the use of force and violence to deprive Daniel McCoy of his right to sell vitamin products...." The second count charged Dabish with an identical extortion of Kumbi Salim. Dabish was convicted on the first count of the indictment and acquitted of the second.

Dabish owned and operated the Powerhouse Gymnasium, a weightlifting facility in Detroit, Michigan. In 1979, as part of the weight training program at Powerhouse, Dabish sold a product called Natural Source, a nutritional supplement for weightlifters. Another physical fitness food, Star-Pro, competed in the market with Natural Source. In June, 1979, complaining witness Daniel McCoy was a Star-Pro sales agent in the Detroit area.

During the summer of 1979, Dabish met with McCoy on several occasions to discuss the possibility of using Powerhouse Gym as a sales outlet for Star-Pro. These conversations never produced an agreement and McCoy abandoned his efforts to enlist Dabish as a Star-Pro distributor.

Meanwhile, Kumbi Salim, a weightlifter who sometimes worked out at Powerhouse Gym, began selling Star-Pro products. When Dabish realized that Salim's activities were affecting the sales of Natural Source at Powerhouse, he telephoned McCoy and invited him to Powerhouse for a meeting. McCoy went to the gym on September 26, 1979. Dabish seated McCoy in an office, left briefly, and returned with his brother. The brother closed the office door and Dabish began to beat McCoy, punctuating his blows with threats. McCoy testified that Dabish said:

> Stan Price (Kumbi Salim) has been selling that stuff in my gym. I told you I didn't want that stuff in my gym. My sales have fallen off 80 percent in supplements and if I ever see a can of that stuff, no matter how it gets there, just one can, I am going to kill you. If I see one can of the Star-Pro, I am going to kill you.

After delivering a final blow that punctured McCoy's eardrum, Dabish threw McCoy down a stairway. With Dabish in pursuit, McCoy fled to his car, which had been vandalized in his absence, and escaped.

Later the same day, Salim visited the Powerhouse Gym. According to Salim's testimony, Dabish admitted that he "beat up Dan McCoy and messed his car up." Salim also testified that Dabish threatened him, saying, "I would kill you but I like you ... I know where your wife works...."

A few days after the beating incident, McCoy stopped selling Star-Pro. He explained that he abandoned the business "for fear of violent response from (Dabish)."

On January 7, 1982, a federal grand jury returned the two-count indictment against Dabish. Trial commenced in the Eastern District of Michigan on March 24, 1982.

In presenting the government's case in chief, the prosecutor offered, as proof of Dabish's intent, evidence that Dabish had committed two previous "anticompetitive" acts. Specifically, the government sought to introduce testimony that in November, 1977, Dabish entered the premises of a competitor, Armento's Health Studio, threatened the owner, and ransacked the place with a machete. Dabish allegedly admitted to Kumbi Salim that his purpose in wrecking Armento's was to discourage competition. Other witnesses, however, thought that Dabish had acted to avenge a racial slur uttered by Armento. The United States also offered proof of a second "similar act" which occurred in 1979. In that instance, Dabish went to Greg's Weight Shop, another competitor of Powerhouse, and threatened the owner and his brother.

Dabish objected to the introduction of this "other acts" evidence, contending that it was inadmissible under Rule 404(b), Federal Rules of Evidence. After hearing argument of counsel, the district judge permitted the United States to put on testimony concerning the Armento's Health Studio incident. Evidence of the confrontation at Greg's Weight Shop, however, he declared inadmissible. The judge drew a distinction between the two "similar acts," ruling that the direct proof of anticompetitive intent in the one case rendered the "Armento's" evi-

dence admissible, whereas the absence of direct proof of intent in the other incident precluded its admission under Rule 404(b).

When the trial judge accepted the "Armento's" evidence, defense counsel requested an immediate limiting instruction to the jury. The judge demurred, observing that a contemporaneous instruction "unduly emphasizes the evidence." The court did, however, deliver the limiting instruction during the general charge to the jury.

Dabish's trial proceeded and resulted in a conviction on count one. On May 20, 1982, the court sentenced Dabish to five years' imprisonment and assessed a $5,000 fine.

On appeal, Dabish argues that the admission of the government's "other acts" evidence mandates reversal of his conviction. He also challenges the district judge's refusal to give a contemporaneous limiting instruction. We reject both arguments and affirm the judgment below.

Rule 404(b) provides:

Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *United States v. Vincent,* 681 F.2d 462, 465 (6th Cir.1982), this court articulated the standard of review applicable to Rule 404(b) questions.

In reviewing the admission of evidence challenged under Rule 404(b), we must make two determinations. First, we must decide whether [the evidence] was admissible for any *proper* purpose, as distinct from the *improper* purpose of showing "character" or "propensity." *United States v. Cooper,* 577 F.2d 1079, 1088 (6th Cir.), *cert. denied,* 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). If we conclude that there was a proper basis for admission, we must then consider whether the probative value of the evidence outweighed its potential prejudicial effects. *See* advisory committee note to

Subdivision (b); *United States v. Ring,* 513 F.2d 1001 (6th Cir.1975). In the second instance, the standard of review on appeal is whether the trial judge abused his discretion in admitting the evidence. *United States v. Czarnecki,* 552 F.2d 698 (6th Cir.), *cert. denied,* 431 U.S. 939, 97 S.Ct. 2652, 53 L.Ed.2d 257 (1977).

(emphasis in original).

 When we apply this two-step analysis to the present case, we find, first, that evidence of the incident at Armento's was properly admissible to show Dabish's intent. That intent was an issue at trial is beyond peradventure. As the United States points out, a Hobbs Act violation is a "specific intent" crime; intent is an essential element of the offense and must be proved beyond a reasonable doubt. *United States v. Kovic,* 684 F.2d 512, 515 (7th Cir.1982); *United States v. Hamilton,* 684 F.2d 380, 384 (6th Cir.1982).

Dabish argues, however, that the government was also required to prove intent in the context of the "Armento's" incident. According to this theory, evidence of the "other act" was inadmissible unless the government demonstrated by "clear and convincing" evidence that Dabish committed the "other act" with the same anticompetitive intent as that required to support a conviction under the Hobbs Act. Dabish contends that the testimony of several eyewitnesses established a racial motivation for the "Armento's" incident. He asserts that the testimony of Salim, who claimed to have heard Dabish acknowledge the anticompetitive intent of his conduct of Armento's, was inherently incredible and insufficient to support admission of the "other act" evidence.

Dabish's argument is unpersuasive. It is true, of course, that "other acts" committed by a defendant are admissible under Rule 404(b) only if they are "substantially similar" to the offense charged. *United States v. Ailstock,* 546 F.2d 1285, 1289–90 (6th Cir.1976). However, we have found no case which supports the assertion that the

government, in establishing "substantial similarity", must adduce direct proof of the defendant's state of mind on a prior occasion.[1] On the contrary, the weight of authority appears to require the government to prove only that the defendant actually committed another act which closely resembled the offense charged. For example, in *United States v. Kahan,* 572 F.2d 923, 932–33 (2d Cir.1979), a prosecution for conspiracy to receive stolen goods, the Second Circuit held that evidence of "other acts" was admissible despite the absence of direct proof that the defendants knew the goods involved in previous transactions were stolen. *See also United States v. Dolliole,* 597 F.2d 102, 107–108 (7th Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979); *United States v. Semak,* 536 F.2d 1142, 1144–45 (6th Cir.1976). In the present case, the United States established beyond doubt that Dabish had a history of directing violent acts against business competitors.[2] This, in our view, was sufficient to support admission of the "Armento's" incident.

With respect to the second aspect of the *Vincent* standard of review, we hold that the district judge did not abuse his discretion in admitting the "Armento's" evidence. It is well settled that a trial judge's discretion in balancing the probative value of evidence against its potential for unfair prejudice is very broad. *United States v. Vincent,* 681 F.2d at 465; *United States v. Czarnecki,* 552 F.2d at 702. In the present case, we decline to substitute our judgment for that of the district court.

■ Finally, we reject Dabish's argument that the district court's refusal to give a contemporaneous limiting instruction was reversible error. As we observed earlier, the judge did give the limiting instruction later in the trial, in the course of his general charge to the jury. We believe the tim-

ing of such an instruction is best left to the trial judge's discretion. He is, after all, in a better position than we to determine whether a contemporaneous instruction would unduly emphasize the evidence in the minds of the jury. *See United States v. Weil,* 561 F.2d 1109, 1111 (4th Cir.1977).

The judgment below is affirmed.

---

1. In *United States v. Shavers,* 615 F.2d 266, 271 (5th Cir.1980), relied on by Dabish, the Fifth Circuit specifically declined to rule on this issue.

2. This case does not require us to choose between the prevalent "clear and convincing" standard and the minority "sufficient to sup-

port a finding" test. *Compare United States v. Dolliole,* 597 F.2d at 106–107 with the *United States v. Beechum,* 582 F.2d 898, 915 (5th Cir. 1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). The eyewitness testimony concerning Dabish's conduct at Armento's amply satisfied either standard.