779 F.2d 53
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
ROBERT LEE BELL, Defendant-Appellant.
 85-5062
 United States Court of Appeals, Sixth Circuit.
 10/24/85
 
 AFFIRMED
 W.D.Tenn.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE
 Before: LIVELY, Chief Judge; WELLFORD, Circuit Judge; and, BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Robert Lee Bell appeals his jury conviction in the United States District Court, Western Tennessee, for (1) conspiracy to engage in theft from interstate shipment and interstate transportation of stolen goods in violation of 18 U.S.C. Sec. 371; (2) aiding and abetting in stealing as well as knowing possession of chattels stolen while moving as interstate shipment in violation of 18 U.S.C. Sec. 659; and, (3) aiding and abetting as well as principally acting in the interstate transportation of stolen goods in violation of 18 U.S.C. Sec. 2314.
 
 
 2
 Bell alleges error in allowing the introduction of certain key pieces of evidence. He moved for suppression of the evidence seized from his vehicle in a warrantless search by police on the grounds no probable cause existed for the search. Bell also moved for the suppression of statements that he made to the police allegedly after his arrest and custodial interrogation and without first being advised of his Miranda rights. Finally Bell objected on grounds of undue prejudice under Rule 404(b) of the Federal Rules of Evidence to the government's introduction of his alleged similar criminal conduct in the past. The trial judge ruled against Bell on all three issues, and he now appeals.
 
 
 3
 The indictment in this case charged defendant with: conspirary to engage in theft of tractor-trailer loads of cereal; aiding and abetting as well as stealing cereal from interstate shipment; aiding and abetting in the stealing and knowing possession of stolen cases of cereal moving in interstate commerce; and, interstate transportation of stolen cereal from the Kellogg Company plant in Memphis.
 
 
 4
 The jury found Bell guilty on Counts I, III and IV, but was unable to reach a verdict on Count II.[1] Richard Jerome Shorter, indicated with Bell, entered a guilty plea to Counts I and II in exchange for dismissal of other counts. Shorter's uncle, Kerry Lee Richardson, also admitted his guilt as to Count III.
 
 I.
 
 5
 In 1983 appellant-defendant Bell was owner of the Springdale Grocery Store in Memphis. During this period the Kellogg's Company plant in Memphis used MDR Truck Line to transport cereal products. On March 22, 1984, Kellogg's loaded 924 cases of 25-ounce Frosted Flakes cereal boxes on a MDR tractor-trailer truck in Memphis for shipment to Atlanta, Georgia. The trailer carrying the boxes remained at the MDR trailer yard the next day. MDR personnel reported the trailer missing on March 25.
 
 
 6
 Investigation into the stolen MDR trailer of Kellogg's products began to focus on Bell, and police officers in an unmarked van followed Bell as he drove a six-wheel 'bob-truck' from his home on July 27. A pick-up truck driven by Shorter and another individual followed Bell's bob-truck. Bell began to drive erratically in an apparent attempt to lose the trailing agents and the following pick-up also attempted to block the officers' van. With back-up assistance, the officers eventually stopped both trucks. The officers at gunpoint directed the occupants out of the trucks and searched both the occupants and vehicle riding areas for weapons. At the request of the officers, Bell removed a padlock and opened up the trailer of the truck he had been driving. Officers found cases of Kellogg's cereal products in the trailer.[2]
 
 
 7
 Bell cooperated initially with the officers' investigation. Bell drove to a nearby motel where he talked to officers through the afternoon and most of the night about the investigation of stolen ??. He emphasized his minor role, and the following day made some phone calls at the officers' request. The officers, however, became displeased with Bell's efforts and terminated their association with him.
 
 
 8
 At trial the government amassed a significant amount of testimonial and other evidence against Bell. As a preliminary matter, the government established that co-defendant Richardson, who had pled guilty, was scheduled to work as a Wells Fargo Security Guard at an adjoining freight yard to that of MDR Truck Line just before the cereal was stolen. According to the testimony of co-defendant Shorter, who also already pled guilty, Richardson had previously told him that MDR had cereal products loaded on its unguarded trailers. After passing this information to Bell, Shorter and Bell agreed to steal a cereal trailer from the MDR yard. According to Shorter, a truck driver, he drove a tractor onto the truck yard of MDR, hooked up the cereal trailer and moved it away. The appellant, who was waiting outside the truck yard, followed Shorter to a location in Memphis where they dropped off the MDR trailer.
 
 
 9
 Witness Gary Wells, a salvage dealer, testified that Bell approached him about buying a bob-truck load of 25-ounce boxes of Kellogg's Frosted Flakes in late spring of 1983. Wells also met Shorter with Bell, and he agreed to sell the cereal if Bell and Shorter transported it to his warehouse in Arkansas. Shorter transported the cereal to Arkansas and Bell followed in his own car. Bell, however, kept three cases back for his grocery store. At appellant's request, Wells paid Kerry Richardson $200. Bell later came by Wells' restaurant while law enforcement personnel were interviewing Wells. According to Wells' associate, Jim Crowley, he was then pulled aside by Bell and told to get rid of the stolen cereal. Bell's nephew testified that he assisted Wells in transporting the cereal from Memphis to Arkansas, and also implicated Bell.
 
 
 10
 A neighbor of Bell's Springdale Grocery testified that during April young men came to her house trying to sell her 25-ounce boxes of Frosted Flakes.
 
 
 11
 Police testified about an interview with Bell at his store before his apprehension. During the interview Bell stated that he knew nothing of cereal being transported to Arkansas. While in the store, however, Agent Hayes noticed a 25-ounce box of Kellogg's Frosted Flakes that had the same date and shift identification markings as the boxes of cereal stolen from MDR, and then confronted Bell about this. Bell responded that he had purchased the cereal from Liberty Cash and Carry on Latham and that his accountant had receipts, but neither source supported Bell's story.
 
 
 12
 The government also offered evidence of Bell's connection with a tractor-trailer rig owned by Richard Rowe, in February of 1984, loaded with stolen frozen beef. Bell admitted selling the beef but said he received it not knowing it was stolen.
 
 
 13
 Also introduced into evidence was evidence that Shelby County policy had pulled over Bell, Shorter, and another individual on February 27, 1983, while they were carrying another trailer load of recently stolen beef. Bell was arrested, but claimed he had just gone along for a ride with Shorter.
 
 
 14
 Finally, a Kellogg Company employee was permitted to testify that in the fall of 1982, Bell approached him about stealing Kellogg's products from the warehouse. He also admitted assisting Bell in loading several trucks with stolen cereal products through July of 1983.
 
 II.
 
 15
 Bell's assertions of error in admission of this evidence of other 'bad acts' has no substantial merit. Rule 404(b) states:
 
 
 16
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, he admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 17
 This reviewing court must first determine whether the evidence of other crimes, wrongs or acts 'was admissible for any proper purpose, as distinct for the improper purpose of showing character or propensity.' United States v. Dabish, 708 F.2d 240, 242 (6th Cir. 1983) (quoting United States v. Vincent, 681 F.2d 462, 465 (6th Cir. 1982)). If there is a proper basis for admission, this court must then consider 'whether the probative value outweighed its potential prejudicial effects.' Id. Finally, the standard of review in weighing probative value versus prejudicial affect, 'is whether the trial judge abused 'is discretion in admitting the evidence.' Id.
 
 
 18
 It was within the trial court's proper discretion to deem the similar conduct at issue in this case closely related in time as proof of motive, intent, preparation, plan, knowledge, identity, or ?? of mistake under Rule 404(b). All the evidence introduced to dispute dealt with Bell's stealing or mysterious possession of large food product items recently stolen. The error, if any, in admitting this evidence of like offenses,[3] would in any event be harmless under the circumstances of overwhelming other proof implicating Bell. Chapman v. California, 306 U.S. 18 (1967).
 
 
 19
 Bell claims that the trial court erred in overruling his motion to suppress evidence from the search of the bob-truck on July 27, 1983, despite admitting that he signed a consent form approving the search of the vehicle. He argues that his consent was not voluntary and thus not in accordance with the due process guarantees of the Fifth Amendment.
 
 
 20
 The voluntariness of a consent to search is 'an issue of fact to be found by the trial court.' United States v. Scott, 578 F.2d 1186, 1189 (6th Cir.), cert. denied, 439 U.S. 870 (1978), see also Rosenthal v. Henderson, 389 F.2d 514, 516 (6th Cir. 1968). The standard of review on appeal is whether the judge's ruling was 'clearly erroneous.' Scott, 578 F.2d at 1189; United States v. Canales, 572 F.2d 1182, 1187, 1188 (6th Cir. 1978).
 
 
 21
 Q. [Government Counsel] At the time you signed this was this form [consent to search form] explained to you?
 
 
 22
 A. [Bell] He read a form, yes.
 
 
 23
 Q. And you signed that form, is that correct?
 
 
 24
 A. Right.
 
 
 25
 Q. And you voluntarily let him get into your van, is that correct?
 
 
 26
 A. Yes, because I had nothing to hide.
 
 
 27
 We agree with Judge Horton's observation that based upon such evidence 'it's obvious that the court has to conclude he [Bell] voluntarily cooperated.'
 
 III.
 
 28
 Bell claims in addition that the district court erred in overruling his motion to suppress evidence gained from his statements during his discussion with the officers after his arrest. Bell acknowledged, however, that he drove himself to the hotel for further discussion. He was not then in custody of the police officers and he was willing to talk to them about the items discovered on the truck. The officers wanted him to go back to Kellogg's and see if he could obtain another load of stolen cereal. He testified that he 'voluntarily' met with the police officers again the next day. Bell stated that he was not allowed to call an attorney, but the police testified that he never asked for an attorney before discussing his role in the stolen cereal. We find no error under the circumstances in permitting this information from Bell as evidence as voluntarily given by him in the hope of securing some sort of beneficial treatment.
 
 
 29
 Accordingly, we AFFIRM the convictions on all counts.
 
 
 
 [1]
 A mistrial was declared as to Count II and it was dismissed after sentencing
 
 
 [2]
 These products, while similar to those recently stolen from Kellogg, were not specifically identified as those taken March 23
 
 
 [3]
 The defendant's counsel also mentions his objection to the introduction of Bell's previous conviction for second degree burglary in 1973, but he makes no specific argument about this incident. Rule 609(b) provides that convictions more than ten years may not be used to impeach unless the court determines that the probative value substantially outweighs their prejudicial affect. United States v. Simms, 588 F.2d 1145, 1150 (6th Cir. 1978). A district court's balancing of these values is reviewable only if there is an abuse of discretion. United States v. Luce, 713 F.2d 1236, 1239 (6th Cir. 1983), aff'd, 105 S.Ct. 460 (1984). We find no abuse of discretion