829 F.2d 39
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Francis BENNETT, Defendant-Appellant.
 No. 86-2010
 United States Court of Appeals, Sixth Circuit.
 September 11, 1987.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and WISEMAN,* Chief District Judge.
 PER CURIAM.
 
 
 1
 Charles Bennett argues error in the handling of his jury trial for armed bank robbery on the grounds of: (1) the admission of similar acts testimony concerning a prior conviction for a bank robbery; (2) the admission as expert testimony of photographic comparison testimony of a federal agent; (3) the failure to order a new trial because of the testimony of another federal agent; and (4) the failure to grant acquittal. We reject all of these contentions and affirm.
 
 
 2
 In January 1986, Bennett was indicted by a grand jury sitting in the Eastern District of Michigan on three counts of armed robbery in violation of 18 U.S.C. Sec. 2113(d) (1982), one count of attempted bank robbery in violation of 18 U.S.C. Sec. 2113(a) (1982), and three counts of use of a firearm to commit a felony in connection with each of the bank robberies in violation of 18 U.S.C. Sec. 924(c) (1982). Bennett's trial began in September 1986. The central issue was the identity of the bank robber. In this connection, the United States introduced some distinctive evidentiary particulars of a bank robbery in Charlevoix, Michigan, for which Bennett had been convicted in April 1986. Also on the issue of identity, the government presented Special Agent Joseph Avignone of the FBI laboratory as a photographic comparisons expert. His testimony was used over Bennett's objections to show the common characteristics between the clothing of the robber of Clifford Bank and clothing found at Bennett's home. He concluded that the coat and trousers were the same as those in the photographs taken during another of the robberies.
 
 
 3
 During the testimony of another government official, Agent Kenneth T'Kindt, the following colloquy occurred:
 
 
 4
 Q. Did you conduct some further investigation after this date?
 
 
 5
 A. Yes, we did. The next major event was on October 31, just a week later, of 1985.
 
 
 6
 I had a chance to review the evidence that we had obtained on the two searches and talked to officers of the State police, as well as my partner. And it came to our mind that we were quite sure tht Mr. Bennett was responsible for the bank robberies in question.
 
 
 7
 MR. MYERS: I object.
 
 
 8
 THE COURT: Objection sustained.
 
 
 9
 The Court would instruct the jury to absolutely and totally disregard any opinion given by the officer. He is not qualified to give an opinion with respect to guilt or evidence--guilt or innocence.
 
 
 10
 He can give evidence, but not opinion. It's inappropriate. Disregard it.
 
 
 11
 Q. (Mr. Brunson continuing): We were going through the process, agent T'Kindt, of you telling us what steps you took.
 
 
 12
 A. We reviewed our evidence. It was our intention to make another attempt at interviewing Mr. Bennett. And the purpose was to show him what I felt was strong evidence in the case.
 
 
 13
 MR. MYERS: Your Honor, I have to object.
 
 
 14
 THE COURT: Objection sustained.
 
 
 15
 Same thing. Again, he can talk about confronting him with the evidence. You did not qualify this man, nor could you, as an expert as to whether or not a particular person committed a crime.
 
 
 16
 I think it is inappropriate and unfair. Don't do it again.
 
 
 17
 A. I'm not doing it intentionally.
 
 
 18
 THE COURT: Regarding this man's guilt or innocence, the jury must determine the evidence.
 
 
 19
 We're not receiving expert testimony on it. He does not qualify as an expert in that respect.
 
 
 20
 MR. BRUNSON: I agree with removing it wholeheartedly.
 
 
 21
 Neither the agent or myself are attempting to deprive the Defendant--
 
 
 22
 THE COURT: That may well be. I want to make it firm enough for the jury.
 
 
 23
 They are to decide from the evidence whether or not you have proven the case, and somebody else's opinion is irrelevant.
 
 
 24
 At the conclusion of the government's proofs and at the close of all of the evidence, Bennett moved for a judgment of acquittal. The court denied the motion and Bennett was convicted on all counts.
 
 
 25
 Bennett now contends there was error in admitting evidence concerning the Charlevoix bank robbery, one of the robberies for which he had already been convicted. That conviction was affirmed by a panel of this court in February 1987. United States v. Bennett, No. 86-1572 (6th Cir. Feb. 20, 1987). Bennett argues that this evidence, which was brought in under Rule 404(b) of the Federal Rules of Evidence, was inadmissible because it was for an improper purpose. We disagree. Rule 404(b) provides:
 
 
 26
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 27
 See also United States v. Ismail, 756 F.2d 1253, 1259 (6th Cir. 1985) (describing the appropriate standard for a trial court to apply in considering other bad acts evidence). We review these 404(b) determinations under the abuse of discretion standard. See United States v. Vincent, 681 F.2d 462 (6th Cir. 1982).
 
 
 28
 The central issue in the trial below was the identity of the bank robber. It is clear the evidence concerning the characteristics of the Charlevoix robbery would be probative on this issue. The 'signature' evidence of the robber's method (selection of isolated branch banks, use of sawed-off shotgun, use of a black motorcycle as an escape vehicle) his apparel (ski mask, blue jean trousers, and dark jacket) and his manner (distinctive walk and talk) were all probative toward the proper 404(b) purpose of establishing identity. See United States v. Dabish, 708 F.2d 240 (6th Cir. 1983). 'The district court has broad discretion in balancing probative value against potential prejudicial impact.' Ismail, 756 F.2d at 1259. The court did not abuse its discretion in determining the value of this signature evidence outweighed the prejudicial impact from the jury becoming aware of the prior conviction.
 
 
 29
 Bennett also challenges his conviction on the grounds that he was denied a fair trial by the improper testimony of Agent T'Kindt. T'Kindt's made several objectionable statements, such as 'we were quite sure that Mr. Bennett was responsible for the bank robberies in question.' Bennett's counsel objected and the court sustained. The court admonished the witness and went on to 'instruct the jury to absolutely and totally disregard any opinion given by the officer. He is not qualified to give an opinion with respect to guilt or evidence--guilt or innocence. . . .'
 
 
 30
 Bennett is right that this should not have come before the jury. However, adequate measures were taken to ensure that the jury would disregard the agent's improper opinion testimony. See United States v. Wells, 431 F.2d 432, 433 (6th Cir. 1970) (only where evidence is exceptionally prejudicial will a new trial be granted). Bennett's counsel quickly objected to T'Kindt's comments and the court sternly admonished the witness in the presence of the jury. The court also clearly instructed the jury to ignore T'Kindt's improper statements. Moreover, the significance of T'Kindt's statements must be kept in perspective. They consisted of a few moments in a trial lasting several weeks.
 
 
 31
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., Chief United States District Judge for the Middle District of Tennessee, sitting by designation