917 F.2d 25
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clifford Leon MOSER and Larry Bryant, Defendants-Appellants.
 No. 90-5264, 90-5440.
 United States Court of Appeals, Sixth Circuit.
 Oct. 25, 1990.
 
 Before BOYCE E. MARTIN, JR., RYAN and SUHRHEINRICH, District Judges.
 PER CURIAM.
 
 
 1
 Clifford Leon Moser and Larry Bryant were codefendants in a six day jury trial. Clifford Leon Moser was convicted on two counts of distributing cocaine, two counts of distributing cocaine within one thousand feet of a private college, and one count for the illegal possession of a firearm, in violation of 21 U.S.C. Secs. 841(a)(1), 845(a) and 18 U.S.C. Sec. 924(c)(1). On appeal, Moser challenges the sufficiency of the evidence which resulted in his conviction and a number of evidentiary rulings made by the district court.
 
 
 2
 Larry Bryant was convicted on one count of distributing cocaine in violation of 21 U.S.C. Sec. 841(a)(1). Bryant also challenges the sufficiency of the evidence which resulted in his conviction and a number of evidentiary rulings made by the district court.
 
 
 3
 Both Bryant and Moser were arrested as a result of an undercover operation conducted by the Federal Bureau of Investigations. In September or October of 1988, Morgan "Bubba" Phillips began working in an undercover capacity at the direction of the FBI. Phillips had been the former police chief of Madisonville, Tennessee, who had become involved in the drug trafficking organization of Tom Bryant, the father of defendant Larry Bryant. Phillips went to the FBI and offered to cooperate in exchange for potential leniency. Phillips was promised nothing by the FBI for his cooperation.
 
 
 4
 On February 22, 1989, Phillips arranged to purchase from Bryant approximately one ounce of cocaine. This transaction took place and was recorded by Phillips at the direction of Agent Merryman. Phillips again met with Bryant on February 27, 1989, and again recorded the conversation between the two men. This conversation centered around Bryant's dealings with another individual to whom he had previously sold cocaine. The FBI suspected that Leon Moser was the individual who was supplying Bryant with the cocaine he was selling. Therefore, after the February 22, 1989, meeting Phillips had with Bryant, Phillips was instructed by Merryman to shift his emphasis to Moser as it had been confirmed by a recorded conversation between Phillips and Bryant that Moser was Bryant's supplier.
 
 
 5
 Between February 22, 1989, and May 18, 1989, Phillips and Moser talked on several occasions. The week prior to May 18, 1989, Phillips talked with Moser for the first time about possibly purchasing cocaine from him. Phillips told Moser that he knew that the ounce he bought from Bryant came from him. On May 18, 1989, Phillips had three separate meetings with Moser which were all recorded. These conversations culminated in Moser selling Phillips cocaine. This meeting took place directly across from the entrance to Hiwassee College in Monroe County, Tennessee.
 
 
 6
 On May 24, 1989, Phillips again met with Moser at Moser's residence. A tape recording of the meeting revealed that Phillips paid Moser $1,200 for an ounce of cocaine and discussed with Moser the possibility of purchasing between four and six ounces of cocaine from Moser at a later date.
 
 
 7
 On August 9, 1989, at the direction of the FBI, Phillips again met with Moser for the purpose of concluding the four or five ounce cocaine transaction which was previously discussed on May 24, 1989. Phillips told Moser that he wanted to purchase four ounces of cocaine on August 9, 1989. Phillips then met Moser at a later time and paid him $4,800 in FBI funds for the cocaine. Moser took the money and told Phillips he would deliver the four ounces to Phillips' house. Moser later came to the residence of Phillips and was arrested by agents of the FBI. Moser was searched and a loaded small-caliber hand gun was found. No cocaine was found on Moser at this time.
 
 
 8
 On August 16, 1989, the Federal Grand Jury for the Eastern District of Tennessee returned a nine-count indictment charging conspiracy and numerous controlled substance violations. The named defendants were Leon Moser, Larry Bryant, and Charles Anderson. Charles Anderson entered a guilty plea to count nine of the indictment charging him with conspiracy to distribute cocaine. He was sentenced to twelve months in prison and three years supervised release.
 
 
 9
 Moser and Bryant raise a number of issues on appeal. Those issues raised by Moser will be discussed first and those raised by Bryant will follow.
 
 
 10
 Moser first argues that there was insufficient evidence to sustain his conviction of attempting to distribute cocaine or for using a firearm in relation to a drug trafficking offense. In reviewing a jury's verdict under a sufficiency of the evidence standard, the court must consider all the evidence in the light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A conviction will be affirmed if any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986) aff'd, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).
 
 
 11
 In order to prove the crime of attempt, the government must introduce evidence to establish: (1) the intent to engage in criminal activity, and (2) the commission of one or more overt acts which constituted a substantial step towards the commission of the substantive offense. United States v. Reeves, 794 F.2d 1101, 1104 (6th Cir.), cert. denied, 479 U.S. 963, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986). At trial, Phillips testified that Moser agreed to sell him four ounces of cocaine on August 9, 1989, and further testified that Moser accepted $4,800 of FBI money in furtherance of that agreement. There was also testimony that on August 9, 1989, Moser went to the residence of Wayne McKeehan, who was suspected by FBI agents to be Moser's supplier. Phillips also testified Moser agreed to deliver the cocaine to his residence. On that same afternoon, Moser did appear at Phillips' residence. This evidence provides adequate support for Moser's conviction for attempting to distribute cocaine.
 
 
 12
 Since there is adequate evidence to support Moser's conviction with respect to attempting to distribute cocaine, his conviction for possessing a firearm must also be affirmed. The statute merely requires the defendant to be in possession of a firearm during a drug trafficking offense. See 18 U.S.C. Sec. 924(c)(1). The testimony is uncontradicted that Moser was in possession of a firearm when he entered Phillips' residence.
 
 
 13
 Moser next argues that the trial court erred when it admitted into evidence cocaine in which the government failed to adequately establish a chain of custody. Absent a clear showing of abuse of discretion, challenges to the chain of custody go to the weight of evidence, not its admissibility. United States v. Levy, 904 F.2d 1026, 1030 (6th Cir.1990). Moser argues that the most important link in the chain, that from Moser to Phillips, was never established. However, Moser himself testified that he had delivered cocaine to Phillips on the dates in question. In short, Moser has failed to demonstrate that the trial judge abused his discretion in admitting the cocaine exhibits.
 
 
 14
 Moser argues next that the trial court erred in admitting tape recorded conversations between Moser and Phillips and Bryant and Phillips because such recordings were inaudible and unintelligible. It is well-settled that the admission of tape recordings at trial rests within the sound discretion of the trial court. United States v. Robinson, 707 F.2d 872, 876 (6th Cir.1983) (citing United States v. Cooper, 365 F.2d 246, 250 (6th Cir.1966), cert. denied, 385 U.S. 1030, 87 S.Ct. 760, 17 L.Ed.2d 677 (1967)). There is nothing in the record which supports Moser's assertion that the trial judge abused his discretion by permitting the tapes to be admitted into evidence. It appears from the record that previously agreed upon transcripts were utilized in accordance with Robinson and therefore any problem of audibility was minimized.
 
 
 15
 At trial, Moser raised the defense of entrapment. Once a defendant has raised the defense of entrapment, the government bears the burden of proving predisposition beyond a reasonable doubt. United States v. Jones, 575 F.2d 81, 83 (6th Cir.1978) However, before a jury verdict can be overturned, a reviewing court must conclude that no reasonable juror could have concluded beyond a reasonable doubt that the defendant was predisposed to violate the narcotics laws. United States v. McLernon, 746 F.2d 1098, 1111 (6th Cir.1984). Moser argues on appeal that the evidence submitted at trial was not sufficient to prove that he was predisposed to commit the crime of distributing cocaine. The trial court heard testimony from a number of individuals which established that Moser was involved in distributing cocaine to a number of individuals who lacked any government involvement. Charles Anderson testified that his source of cocaine during this period was Leon Moser. This testimony is corroborated by the testimony of agents of the First Judicial District Drug Task Force and Criminal Investigations Division who observed Moser and Anderson meet immediately after an undercover agent arranged to purchase cocaine from Anderson.
 
 
 16
 Moser himself shows his predisposition in the recorded conversations when he mentions his others customers and how his policy is to offer his customers a money back guarantee if not satisfied. Therefore, we find that the record contains sufficient evidence to support a jury finding that Moser was predisposed to crime and not entrapped.
 
 
 17
 Moser also contends that the trial court erred in permitting the testimony of Lee Plemons to be introduced into evidence. Plemons testified that on February 27, 1989, he purchased an "eight ball" of cocaine from Bryant immediately following a meeting between Moser and Bryant and also that Bryant had previously sold him a gram of cocaine in the fall of 1988. Moser argues this testimony should not have been admitted under Fed.R.Evid. 404(b). The law is clear that evidence of past criminal activity is inadmissible to show criminal propensity. See United States v. Davis, 707 F.2d 880, 884 (6th Cir.1983). Before admitting prior acts evidence, the district court must determine that the evidence is admissible for a proper purpose and that the probative value of the evidence outweighs its potential prejudicial effects. United States v. Dabish, 708 F.2d 240, 242 (6th Cir.1983); United States v. Vincent, 681 F.2d 462, 465 (6th Cir.1982). The district court has broad discretion in balancing probative value against potential prejudicial impact. Dabish, 708 F.2d at 242; Vincent, 681 F.2d at 465. Furthermore, prior acts generally must be substantially similar to, and near in time to, the offense charged in the indictment. See United States v. Ismail, 756 F.2d 1253, 1259 (6th Cir.1985).
 
 
 18
 At trial, the government argued that the testimony of Plemons showed that Moser and Bryant were involved in an ongoing scheme or plan to distribute cocaine. The district court admitted Plemons' testimony based upon this rationale. Plemons testified that on February 27, 1989, he bought an "eight ball" of cocaine from Larry Bryant after Bryant received a visit from Leon Moser. This transaction occurred during the time period charged in the conspiracy count of the indictment. This testimony goes to establish Bryant and Moser were involved in an ongoing scheme or plan to distribute cocaine. The fact that Moser and Bryant had met immediately prior to Bryant's delivery of cocaine to Plemons supports the theory that Moser was Bryant's supplier and that they were working together. The testimony of Plemons that Bryant had sold him cocaine in the fall of 1988 is also evidence of this plan to distribute cocaine. Although this transaction occurred prior to the time period charged in the conspiracy count of the indictment, it is still close enough in time to be considered part of the ongoing scheme. See Ismail, 756 F.2d at 1260.
 
 
 19
 In deciding whether to admit the testimony of Plemons, the district court determined that its probative value outweighed its prejudicial effect. United States v. Pollard, 778 F.2d 1177, 1179 (6th Cir.1985). This Court reviews a district judge's balancing of prejudicial impact and probative value under Fed.R.Evid. 403 and Fed.R.Evid. 404(b) under an abuse of discretion standard. United States v. Hollaway, 740 F.2d 1373, 1377 (6th Cir.), cert. denied, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984). We find that the district court did not abuse its discretion in admitting the testimony of Plemons.
 
 
 20
 Bryant's primary argument on appeal is that error was committed when unredacted tape recordings were sent to the jury room which contained conversations about Bryant's involvement with stolen automobiles. Before trial, the government and defense counsel met and agreed that certain segments of the conversations which took place between Phillips and Bryant would be redacted from the transcripts and the tapes. The segments to be redacted were any statements made by Phillips or FBI agents outside of Bryant's presence and any references to stolen cars. The transcripts were redacted in accordance with this agreement. At trial, the government played only the agreed upon portions of the tapes to the jury. Upon the conclusion of trial, these tapes along with a tape recorder were made available to the jury. These tapes were later discovered not to have been redacted and contained references to Bryant being involved with stolen automobiles.
 
 
 21
 The government acknowledges that the unredacted tapes were sent into the jury room, but claims the error was harmless. It was error for these segments of the tapes to reach the jury. See United States v. Blankenship, 775 F.2d 735, 739 (6th Cir.1985) (evidence to show predisposition regarding entrapment permitted only when other crimes are of same nature as those charged). This information reaching the jury could have significantly affected the viability of Bryant's entrapment defense.
 
 
 22
 Therefore, as to defendant Moser, his conviction is affirmed. As to defendant Bryant, his conviction is reversed, and the case is remanded for a new trial.