16 F.3d 1223
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Elbert L. SUGGS, Defendant-Appellant.
 No. 93-5357.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1994.
 
 On Appeal from the United States District Court for the Middle District of Tennessee, No. 92-00008; Higgins, J.
 M.D.Tenn.
 AFFIRMED.
 BEFORE: JONES and SUHRHEINRICH, Circuit Judges; and McKEAGUE, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-Appellant Elbert Ladale Suggs appeals his conviction on two counts of conspiracy to possess marijuana and cocaine with intent to distribute (in violation of 21 U.S.C. Secs. 841(a)(1) and 846). On appeal, he argues that: (1) the government failed to prove all of the elements of conspiracy; (2) the trial court erroneously admitted evidence of prior wrongful acts; (3) the trial court misapplied the sentencing guidelines; and (4) he is entitled to have his conviction reversed or to have a new trial due to the death of his co-conspirator. We find that these arguments are without merit, and we affirm both the conviction and the sentence.
 
 I. FACTS
 
 2
 In early 1992, Robert Wayne Rushing, who was working for the FBI and the Tennessee Highway Patrol as a paid informant in undercover drug investigations, introduced Tennessee state trooper John Albertson, working undercover, to Jerry Hitchcox. Hitchcox and Rushing sold drugs together before Rushing became an informant. Albertson told Hitchcox he was looking to put together a drug deal. Rushing and Hitchcox contacted Phillip Kemp Williams, who responded that he could find a buyer. Williams named the defendant, Suggs, as a potential buyer. Williams arranged for Albertson to meet Suggs in order for Albertson to sell marijuana and cocaine to Suggs.
 
 
 3
 Albertson, Rushing, Hitchcox, Williams, and Suggs met at a truckstop in Tennessee near the Alabama border on July 7, 1992. Williams introduced Albertson to Suggs and told Suggs that Albertson had both marijuana and cocaine to sell. Suggs showed Albertson a wad of money ($4,452). The money that Suggs had, however, was a very small fraction of the amount he would have needed to complete the deal. Nevertheless, Albertson told Suggs that he would call to have the drugs brought over. Instead, Albertson signalled surveillance officers to come and make arrests. While waiting for the drugs, Suggs asked Albertson what the drugs looked like and how much they would cost. At this point, Hitchcox, Rushing, Williams, and Suggs were taken into custody. Suggs had not yet stated whether he intended to purchase the drugs, and had not seen or touched them.
 
 
 4
 Suggs and Williams were tried together as co-conspirators. At trial, the government's case consisted of the testimony of Rushing, Hitchcox, and Albertson, along with several taped phone conversations, primarily between Hitchcox and Albertson, and Albertson and Williams. The testimony indicated that Suggs had bought drugs from Rushing and Hitchcox on two prior occasions before Rushing began working as an informant.[1] On December 14, 1992, the jury found Suggs and Williams guilty on both counts.
 
 
 5
 The trial court sentenced Suggs to 121 months of imprisonment on count 2 and 60 months on count 1, to run concurrently, along with 5 years of supervised release. Williams died prior to being sentenced, and the trial court granted the government's motion to dismiss the action against Williams on March 2, 1993. Suggs moved to vacate his conviction on the ground that the dismissal of Williams's conviction resulted in Suggs being convicted for a single person conspiracy. The trial court denied this motion. This appeal followed.
 
 II. DISCUSSION
 A. Sufficiency of the Evidence
 
 6
 In United States v. Blakeney, 942 F.2d 1001, 1009 (6th Cir.1991), cert. denied, 112 S.Ct. 881 (1992), we held that:
 
 
 7
 The elements of the drug conspiracy offense are the following: (1) the defendants entered into an agreement to ... possess with intent to distribute [controlled substances]; (2) they did so willingly; and (3) one of the conspirators knowingly committed at least one overt act in furtherance of the conspiracy.
 
 
 8
 To prove the first element, the government does not need to prove the existence of a formal or express agreement--a tacit or mutual understanding among the parties that they are working to accomplish an unlawful goal is sufficient. Id. at 1009-10 (citing United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989); United States v. Hughes, 891 F.2d 597, 601 (6th Cir.1989)). Such a tacit understanding can be inferred from circumstantial evidence. Id. at 1010 (citing United States v. Bavers, 787 F.2d 1022, 1026 (6th Cir.1985)). However, mere association among the parties is not sufficient to establish a conspiracy. Id. (citing United States v. Pearce, 912 F.2d 159, 162 (6th Cir.1990), cert. denied, 498 U.S. 1093 (1991)).
 
 
 9
 Suggs contends that the government failed to prove the first of these elements, the existence of an agreement. This amounts to a claim that the evidence against Suggs was insufficient to support a conviction. According to Blakeney:
 
 
 10
 The relevant inquiry when reviewing claims of insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Circumstantial evidence and direct evidence are accorded the same weight and " 'the uncorroborated testimony of an accomplice may support a conviction under federal law.' " United States v. Frost, 914 F.2d 756, 762 (6th Cir.1990) (quoting United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986)). Therefore, we will reverse a judgment for insufficiency of evidence only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence. Ellzey, 874 F.2d at 328.
 
 
 11
 Id.
 
 
 12
 There was ample evidence from which a rational jury could infer that Suggs conspired to purchase marijuana and cocaine. The evidence indicated that Williams named Suggs as a potential buyer in taped telephone conversations, that Williams arranged a meeting between Suggs and Albertson for the express purpose of enabling Suggs to buy drugs, and that Suggs appeared at the meeting expressing an interest in the quality and cost of Albertson's drugs. From this evidence, it was rational for the jury to find that Suggs had a tacit or mutual understanding with Williams that they were working together toward the unlawful goal of enabling Suggs to purchase cocaine and marijuana.
 
 
 13
 Suggs argues that there was no evidence of an express agreement between Suggs and Williams, that the drug transaction with Albertson was never consummated, and that, due to unmet preconditions, Albertson and Suggs never reached an agreement that Suggs would buy Albertson's drugs.[2] These considerations are all irrelevant. In order for an unlawful conspiracy to exist, it is not necessary that any agreement be express, that any actual drug transaction was consummated, nor that various preconditions for the sale of drugs were met. All that is necessary to establish the first element of a conspiracy to buy drugs is that the defendant had a tacit or mutual understanding with a co-conspirator that the two were working together toward the unlawful goal of possessing drugs with intent to distribute.
 
 
 14
 Suggs also argues that there was no evidence that the alleged conspirators had any agreement to distribute the drugs. The government correctly responds that an intent to distribute can be inferred from the quantities of the drugs that were to be purchased. United States v. Dotson, 871 F.2d 1318, 1323 (6th Cir.1989) (citing United States v. Faymore, 736 F.2d 328, 333 (6th Cir.), cert. denied, 469 U.S. 868 (1984)).[3] Albertson testified that when someone deals in pounds of marijuana and in kilograms of cocaine, they do so with the intent to distribute it. Thus, the evidence was sufficient to establish the first element of the charged offense.
 
 B. Evidence of Prior Wrongful Acts
 
 15
 The district court admitted evidence showing that, on two occasions in 1991, Williams made arrangements for Suggs to buy marijuana and cocaine from Rushing and Hitchcox at Williams's house. Suggs contends that this evidence was improperly admitted under Rules 403 and 404(b) of the Federal Rules of Evidence.
 
 Rule 403 provides in relevant part:
 
 16
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury....
 
 Rule 404(b) provides in relevant part:
 
 17
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 18
 Until recently, we reviewed a trial court's decisions to admit or to deny evidence under Rule 404(b) for abuse of discretion. United States v. Gessa, 944 F.2d 265, 268-69 (6th Cir.1991), vacated, 971 F.2d 1257, 1261 (6th Cir.1992) ( en banc); United States v. Passarella, 788 F.2d 377, 384 (6th Cir.1986). However, in Gessa, the en banc court reformulated this standard of review into a three part test:
 
 
 19
 Although this court has frequently stated that we review 404(b) evidence under an abuse of discretion standard, we believe it is more precise to state the following. First, it must be determined as a matter of preliminary fact whether there is sufficient evidence that the prior act occurred. Second, a legal determination must be made whether the "other act" allegedly committed by the defendant was admissible as evidence of "intent, preparation, or plan." ... Finally, in ruling on the admission of 404(b) evidence, the district court must determine whether the "other acts" evidence is more unfairly prejudicial than probative, which is governed by an abuse of discretion standard.
 
 
 20
 971 F.2d at 1261-62 (citations omitted). The first prong of the test is reviewed under the "clearly erroneous" standard, and the second prong is reviewed de novo. Id. As for the third prong, and as for the standard of review for Rule 403, "[i]t is well settled that a trial judge's discretion in balancing the probative value of evidence against its potential for unfair prejudice is very broad." United States v. Dabish, 708 F.2d 240, 243 (6th Cir.1983).
 
 
 21
 In the present case, the first and third prongs of the test are easily met. Rushing and Hitchcox both testified that the prior acts occurred. There is nothing in the record to indicate that it was clearly erroneous for the district court to credit their testimony. Similarly, there is nothing in the record that suggests that the district court abused its discretion in holding that the probative value of the prior acts evidence outweighed any risk of unfair prejudice.
 
 
 22
 As for the second prong, we review de novo the district court's determination that the prior acts evidence was relevant to opportunity, intent, preparation, plan, knowledge, identity, and the absence of mistake or accident. In Passarella, 788 F.2d at 383-84, we held that evidence of prior drug dealings between the defendant and some of the same individuals involved in the case at trial was admissible, where the prior dealings were substantially similar and had occurred approximately one year before the matters alleged in the indictment. We found that the evidence was relevant to the background and development of the conspiracy, and it indicated that there was an on-going plan to engage in the sorts of drug crimes that were at issue in the case. See also Gessa, 971 F.2d at 1262; United States v. Hitow, 889 F.2d 1573, 1579 (6th Cir.1989).
 
 
 23
 The instant case is similar to Passarella in all relevant respects. Accordingly, we hold that the prior acts evidence in the present case was relevant to preparation or plan. It follows that, as per Gessa, the evidence was admissible under Rule 404(b). Given the broad discretion afforded a trial judge's balancing of probative value against risk of unfair prejudice, the evidence was also admissible under Rule 403.
 
 
 24
 Suggs emphasizes that the government spent over half of its direct examination of Rushing dealing with the prior acts, as well as a large portion of Hitchcox's direct examination. Suggs also stresses that the prior acts occurred over a year earlier than the charged conduct and were dissimilar in various ways. Suggs also points out that the evidence of the prior acts came solely from the testimony of Rushing and Hitchcox who, Suggs argues, are not credible witnesses. All of this is irrelevant. None of these considerations changes the result of applying the tripartite Gessa test to the instant facts.
 
 C. Sentencing Guidelines
 1. Amount of Drugs
 
 25
 Suggs contends that the district court improperly determined the amount of drugs that was the object of the conspiracy. A finding regarding the amount of drugs that are involved in an offense needs only to be supported by a preponderance of the evidence. United States v. Davis, 981 F.2d 906, 911 (6th Cir.1992), cert. denied, 113 S.Ct. 2361 (1993). The district court's finding in this regard is a finding of fact subject to a deferential "clearly erroneous" standard of review. Id. at 911-12; see also 18 U.S.C. Sec. 3742(e); United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991). A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, " 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364 (1948)).
 
 
 26
 The evidence produced at trial indicated that Williams told Albertson that "his people," which expressly included Dale Suggs, would buy two kilograms of cocaine and about 100 pounds of marijuana. From this evidence, the district court found that the object of the conspiracy was to purchase two kilograms of cocaine and 100 pounds of marijuana. We cannot say that this finding was clearly erroneous.
 
 
 27
 Suggs argues that he did not have enough money to purchase that amount, but the court noted that, in the 1991 drug transactions at Williams's house, Suggs also did not carry the drug buy money with him when he initially viewed the marijuana and cocaine. Consequently, the court rejected Suggs's claim that he was incapable of coming up with more money or of consummating the drug deal.
 
 
 28
 Suggs also points out that there was no agreement regarding the amount of drugs he might have bought from Albertson, and that, in the 1991 transactions, Suggs bought less than the full amount of drugs tendered. These facts do not render clearly erroneous the court's reliance on Williams's statements regarding the amount of drugs that "his people" would buy.
 
 2. Minor Participant
 
 29
 Suggs claims that he was involved in the transaction for only fourteen minutes, and he argues that this makes him a "minor participant," entitled to a reduction in his sentence pursuant to U.S.S.G. Sec. 3B1.2 ("a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal."). The court found, however, despite the brief duration of the meeting between Albertson and Suggs, that Suggs was an organizer/leader in the drug transaction. Given that the length of the meeting between Albertson and Suggs was not the only indication of Suggs's involvement, Suggs has not shown the district court's finding to be clearly erroneous.
 
 3. Family Circumstances
 
 30
 Suggs contends that he was entitled to a downward departure in sentencing due to extraordinary family circumstances. According to her physician, Suggs's wife, Rita, is unable to work due to a medical condition. Thus, she and Suggs's two children are dependent on Suggs for their livelihood and well-being. (The government notes that Suggs's two children are 17 and 18 years old.) The district court found that these circumstances were not extraordinary enough to warrant a downward departure. This finding was well within the court's discretion, for " '[a] district court's refusal to depart downward from a sentence within the properly computed guideline range is not appealable.' " United States v. Morgan, 986 F.2d 151, 152 (6th Cir.1993) (quoting United States v. Pickett, 941 F.2d 411 (6th Cir.1991)).
 
 D. Death of Co-conspirator
 
 31
 Finally, Suggs contends that, when Williams died and the action against him was dismissed, the "only link ... between Suggs and the conspiracy is now removed from the chain." Williams is the only person with whom Suggs allegedly conspired, and "[a]s a general rule, the conviction of only one defendant in a conspiracy prosecution will not be upheld where all the other alleged coconspirators are acquitted." United States v. Musgrave, 483 F.2d 327, 333 (5th Cir.), cert. denied, 414 U.S. 1023 (1973).
 
 
 32
 Once again, Suggs's argument is without merit. In United States v. Sachs, 801 F.2d 839, 845 (6th Cir.1986), we held that, even though charges were dismissed against a coconspirator, the district court did not err by denying the only remaining conspirator's motion to dismiss the conspiracy count against him. We agreed that "[i]t is clear that the crime of conspiracy cannot be committed by an individual acting alone since, by definition, conspiracy is a group offense." Id. Thus, "an acquittal on conspiracy charges as to all but one coconspirator mandates acquittal on conspiracy charges as to the remaining defendant." Id. (citing United States v. Espinosa-Cerpa, 630 F.2d 328, 331 (5th Cir.1980)). However, we stressed that:
 
 
 33
 if charges are never brought against other alleged coconspirators, if charges are dismissed against all other coconspirators, or if a coconspirator has not yet been tried, dismissal of charges against the remaining conspirator is not required. See, e.g., [United States v.] Sangmeister, 685 F.2d [1124,] 1126-27 [ (9th Cir.1982) ] (dismissal of charges against coconspirator); United States v. Shipp, 359 F.2d 185 (6th Cir.) (one coconspirator had been granted a nolle prosequi and the other had not been tried), cert. denied, 385 U.S. 903 (1966); Ng Pui Yu v. United States, 352 F.2d 626, 633 (9th Cir.1965) (charges against 13 of the 14 coconspirators were dismissed; "it is not necessary, to sustain a conviction for a conspiracy, that coconspirators be charged."). This is so because a dismissal of charges is not the equivalent of an acquittal. United States v. Fox, 130 F.2d [56,] 58 [ (3d Cir.), cert. denied, 317 U.S. 666 (1942) ].
 
 
 34
 Id.
 
 
 35
 In the present case, Williams was not acquitted. The action against him was dismissed only because he died. As per Sachs, the district court did not err in denying Suggs's motion to dismiss on the basis that he was the sole remaining conspirator.
 
 III. CONCLUSION
 
 36
 For the foregoing reasons, we affirm both Suggs's conviction and his sentence.
 
 
 
 *
 The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 In March 1991, Rushing, Hitchcox, and another man arranged to sell marijuana at Williams's house in Alabama. Williams arranged for Defendant Suggs to examine the marijuana. Suggs bought 92 pounds of it. A month and a half later, the same men met again at Williams's house and Suggs bought a kilogram of cocaine. Rushing began working as an informant in February 1992
 
 
 [2]
 According to Suggs, there were two unmet preconditions. First Suggs did not have enough money to buy the drugs, and second, Albertson had not yet allowed Suggs to inspect the drugs
 
 
 [3]
 Part IIB of the Dotson decision, 871 F.2d at 1322-23, was vacated on other grounds. United States v. Dotson, 895 F.2d 263, 266 (6th Cir.), cert. denied, 498 U.S. 831 (1990). In the later Dotson opinion, we held that "The original opinion remains the opinion of the court on all issues" except for the one discussed in Part IIB. Id. at 264. The holding that an intent to distribute can be inferred from possession of large quantities of drugs occurred in Part IIIA of the original Dotson opinion, which therefore remains good law. 871 F.2d at 1323