21 F.3d 429
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Emogene LAWRENCE (93-5534), Julie Lawrence (93-5535), and
Michael Lee Lawrence (93-5536),) Defendants-Appellants.
 Nos. 93-5534 to 93-5536.
 United States Court of Appeals, Sixth Circuit.
 April 14, 1994.
 
 Before: NELSON and SILER, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a consolidated appeal from the defendants' convictions and sentences on marijuana distribution charges. The defendants argue that the evidence was insufficient to prove their guilt beyond a reasonable doubt and that the district court committed error in certain of its evidentiary rulings. Each of the defendants claims error in the application of the United States Sentencing Guidelines. Finding no merit in the defendants' contentions, we shall affirm the judgment in all respects.
 
 I.
 
 2
 On January 5, 1992, a convicted marijuana dealer named Randy Brazier was arrested in South Carolina on drug-dealing charges. Mr. Brazier entered into a plea bargain under which he agreed to assist the authorities in proceeding against the people who were supplying him with drugs. One of his suppliers was his aunt, defendant Emogene Lawrence. According to Brazier, he purchased marijuana from his aunt on five separate occasions beginning in 1991. Emogene Lawrence sold him some of the marijuana on credit, and at the time of his arrest Mr. Brazier owed her $2,000 for prior sales.
 
 
 3
 Emogene Lawrence, who was 64 years of age at the time of her arrest, lived in DeKalb County, Tennessee, with her 34-year-old son, Ricky Lawrence, and her 14-year-old granddaughter, Cindy Lawrence. Another son, defendant Michael Lawrence, lived in a trailer on the same property, and Emogene Lawrence's daughter, defendant Julie Lawrence, lived in a separate trailer on the property.
 
 
 4
 Under direction from the authorities, Randy Brazier made four tape-recorded telephone calls to Emogene Lawrence on January 5 and 6, 1992. In the first call Mr. Brazier asked Mrs. Lawrence whether she could sell him 20 pounds of marijuana. Mrs. Lawrence answered that she wasn't sure and asked him to call her back to see whether she had been able to obtain it. She told him that the price would vary according to who sold it to her, but she estimated that the price would be at least "14" (presumably meaning $1,400 per pound). During a subsequent phone call, in which Brazier spoke with Ricky Lawrence, Ricky suggested that he could have his brother Michael call back to let Brazier know whether Emogene would have the marijuana.
 
 
 5
 Randy Brazier and Emogene Lawrence were eventually able to confirm the deal. Mrs. Lawrence quoted him a price of "12 a pound"--meaning $1,200 per pound--and told him to meet her at her home. She planned to obtain the marijuana from Timothy Poss, who lived about a half mile away. Mr. Poss testified that Emogene had called him on January 6, 1992--one day after Brazier's initial inquiry--to ask whether he had any marijuana to sell. When Mr. Poss expressed concern about the identity of her buyer, she told him that she would be selling the marijuana to her nephew Randy Brazier. Mr. Poss knew Mr. Brazier, and he agreed to sell 20 pounds to Emogene for a total of $22,000.[1]
 
 
 6
 Mr. Poss visited Michael Lawrence at his trailer the following day to discuss the deal, and Michael assured Poss that Brazier could be trusted. On January 8--the scheduled sale date--Mr. Poss went to Emogene Lawrence's residence three times to confirm that the sale would occur and that Brazier could be trusted. All three of the defendants were present during these visits, and all three assured Mr. Poss that everything would go smoothly. Poss also testified that both Michael and Julie Lawrence had asked to borrow a share of their mother's profit on the sale, and that Emogene had agreed to lend the money.
 
 
 7
 On the day of the sale Brazier was outfitted with a recording device to monitor his conversations with the Lawrences. A specially equipped van was parked nearby, and officers in the van conducted surveillance from 2 o'clock in the afternoon until approximately 5 or 5:30 p.m. that evening.
 
 
 8
 Brazier and undercover officer Randy Elmore, who posed as Brazier's buyer, drove to Emogene Lawrence's house at approximately 2 p.m. Officer Elmore remained in the car, and Brazier went inside. Emogene and Ricky Lawrence were there, as were an unidentified child and two family friends named Treena Martin and Dino Checci. Emogene informed Brazier that it might be a few hours before the marijuana arrived, and Brazier said that he and his buyer would go to a Hardees restaurant in the interim. While they were eating at the restaurant the two men saw Michael Lawrence and his girlfriend drive through the Hardees parking lot, apparently checking on them.
 
 
 9
 Brazier and Officer Elmore then went back to Emogene Lawrence's home and had a brief conversation with Julie Lawrence. She assured them that all was well, but said that the marijuana would not be ready for another two hours. The two left again and returned some time later. Brazier went inside to announce their return, at which point Emogene Lawrence directed Michael Lawrence to go out to Brazier's car and confirm that he had the money.[2] At about this time, according to the testimony of Dino Checci, Emogene Lawrence told her granddaughter, Cindy Lawrence, to go to a nearby community center to "look for the cops." Soon after this conversation was said to have occurred, Officer Elmore saw Julie Lawrence and Cindy Lawrence walk outside to "scout out" the area. Julie Lawrence was heard to inquire whether anyone was in the van.
 
 
 10
 Timothy Poss entered Emogene's residence minutes later with 20 pounds of marijuana. Brazier and Officer Elmore soon went in also. They saw Michael Lawrence sitting on the basement steps, while Timothy Poss and Emogene Lawrence were in the basement standing next to a table, digital scales, and garbage bags filled with marijuana. Michael expressed discomfort with the stranger's presence in the house and moved to the top of the steps. Brazier and Officer Elmore inspected the marijuana and then gave the code word indicating it was time for the arrest.
 
 
 11
 The officers in the van turned on their headlights and ran to secure the house. Cindy Lawrence started running toward the house at this point, shouting that the police were outside. Michael Lawrence attempted to flee but was apprehended.
 
 
 12
 A search of the home disclosed the 20 pounds of marijuana brought by Timothy Poss and an additional 50.1 grams of marijuana. Also found were two unloaded guns and two spiral notebooks containing records in Emogene's handwriting. Emogene admitted that these notebooks contained records relating to her marijuana sales, and she also admitted that she had agreed to obtain and sell 20 pounds of marijuana to Randy Brazier; that she had engaged in similar transactions on two earlier occasions; and that her son, Michael Lawrence, had verified that Randy Brazier had the money for the sale.
 
 
 13
 Julie Lawrence, who was apprehended in her trailer, unsuccessfully attempted to grab a sheriff's gun. While being transported to the police station, she became violent and attempted to break the windows of the police cruiser. The officers found 170.8 grams of marijuana in her trailer when it was searched.
 
 
 14
 A federal grand jury issued a four-count indictment against the three defendants. Count one charged all three with conspiracy to distribute marijuana, a violation of 21 U.S.C. Sec. 846. Count two charged all three with possession of marijuana with intent to distribute it, a violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2.[3] Count three charged Emogene Lawrence alone with use of a telephone to facilitate the unlawful distribution of marijuana, a violation of 21 U.S.C. Sec. 843(b). Count four charged all three defendants with using a minor to assist in avoiding detection or apprehension in connection with the offenses charged in counts one and two, a violation of 21 U.S.C. Sec. 861 and 18 U.S.C. Sec. 2.
 
 
 15
 The jury trial began on January 28, 1993, and continued through February 2, 1993. Mr. Poss testified at trial that he had heard each of the defendants order Cindy Lawrence to go outside to look for undercover agents when marijuana transactions were taking place in the past. In addition, the government introduced testimony that Cindy Lawrence had been observed performing what appeared to be a "lookout" function on several occasions during the months prior to the sale at issue here. The government also introduced a videotape showing what the officers found in their search of Emogene Lawrence's home. The tape showed the two unloaded guns, but the officers testified at the trial that neither gun was loaded and neither had been used in connection with the drug transaction.
 
 
 16
 The jury found each defendant guilty as charged. The defendants were sentenced on April 5, 1993, Emogene receiving a sentence of imprisonment for 135 months and Julie and Michael Lawrence each receiving a sentence of 97 months. These appeals followed.
 
 II.
 A. Sufficiency of Evidence
 
 17
 Julie and Michael Lawrence challenge the sufficiency of the evidence on counts one and two of the indictment. The question we must answer in this regard "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 18
 To show that a defendant is guilty of conspiracy to distribute drugs, the government must prove that a conspiracy existed, that the defendant knew of it, and that he knowingly and voluntarily joined it. United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986). The existence of a conspiracy may be proved by either direct or circumstantial evidence. United States v. Blakeney, 942 F.2d 1001, 1010 (6th Cir.1991), cert. denied, 112 S.Ct. 881 (1992). Once the existence of a conspiracy is established, the government need only present "slight evidence" to connect a defendant to it. United States v. Hitow, 889 F.2d 1573, 1577 (6th Cir.1989). "It is only necessary," we said in Hitow, "that a defendant know of the object of the conspiracy, associate himself with it, and knowingly contribute his efforts in its furtherance." Id. It is indisputable that there was a conspiracy here, and we think there was ample evidence that both Julie and Michael Lawrence joined it.
 
 
 19
 The record shows that Julie Lawrence participated in the conspiracy by telling Timothy Poss that her cousin, Randy Brazier, was trustworthy and by offering assurances to Randy Brazier and Officer Elmore on the day of the sale. She also furthered the conspiracy by scouting out the neighborhood around the time of the sale to look for signs that law enforcement officers might be near. There was evidence that she expected to profit from the sale, because she planned to borrow some of the proceeds from her mother.
 
 
 20
 The evidence against Michael Lawrence was even more compelling. Michael was in the house watching the weighing of the marijuana, and he also facilitated the transaction by assuring Timothy Poss of his cousin's bona fides. Both Brazier and Officer Elmore testified that Michael Lawrence drove to the Hardees to check on them and that he went to Brazier's car to verify that Brazier and Officer Elmore had the money for the purchase. And like his sister, Michael Lawrence expected to receive a loan from the proceeds of the sale.
 
 
 21
 By aiding and abetting their mother, Julie and Michael Lawrence also committed the crime of possession of marijuana with intent to distribute it. "The elements of possession with intent to distribute are (1) knowing (2) possession of a controlled substance (3) with intent to distribute." Christian, 786 F.2d at 210. Under 18 U.S.C. Sec. 2, Julie and Michael Lawrence could be convicted of possession with intent to distribute if they knowingly assisted their mother in the commission of that offense. We think it was entirely rational for the jury to conclude, based upon the evidence introduced at trial, that both Michael and Julie Lawrence knew exactly what their mother was doing and assisted her in doing it.
 
 
 22
 All three defendants challenge the sufficiency of the evidence relating to count three of the indictment, which charged use of a minor to facilitate a drug sale. Again, we think the evidence was sufficient to support a rational juror's conclusion that each of the defendants was guilty.
 
 
 23
 Dino Checci, who was in the house most of the afternoon of August 8, testified that he heard Emogene Lawrence order Cindy Lawrence to look for the police. The testimony regarding this order was corroborated by the officers' observation of Cindy acting as a lookout. And the girl's actions speak for themselves; when she became aware of the police officers, she immediately tried to alert her family to the impending bust.
 
 
 24
 Although there is no direct evidence to show that Julie and Michael Lawrence ordered the child to act as a lookout, there is plenty of circumstantial evidence that they knowingly relied on her to do this. Both Julie and Michael were in the house with Cindy shortly before the transaction occurred. Timothy Poss testified that all of them had ordered Cindy to act as a lookout on prior occasions, and police officers testified that they had seen her performing a lookout function at the house on several occasions in the months preceding the arrest. Viewing this evidence in the light most favorable to the government, we think the evidence was adequate to support the jury's conclusion on count three. It was foreseeable to Michael and Julie Lawrence, moreover, that their mother would be ordering the child to act as a lookout to further the conspiracy. Michael and Julie may thus be held liable under the rule of Pinkerton v. United States, 328 U.S. 640 (1946).
 
 B. 404(b) Evidence
 
 25
 Michael and Julie Lawrence claim error in the district court's decision to admit the evidence that Cindy Lawrence had acted as a lookout on previous occasions. Rule 404(b), Fed.R.Evid., forbids the introduction of "evidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show conformity therewith." The rule goes on to provide that such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." Huddleston v. United States, 485 U.S. 681, 686 (1988). Once the court determines that the evidence is admissible for a proper purpose, the court must decide whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Rule 403, Fed.R.Evid.; United States v. Blankenship, 775 F.2d 735, 739 (6th Cir.1985).
 
 
 26
 We think the district court was correct in ruling that this evidence was admissible for purposes other than demonstration of bad character. The evidence showed the defendants' control over Cindy Lawrence, and it showed their immediate motive in sending her outside.[4] We agree with the government, moreover, that the use of Cindy Lawrence as a lookout on occasions prior to the August 8 transaction was directly relevant to the conspiracy charge against all three defendants. The evidence that Cindy had been regularly used as a lookout pertained to the period in which the marijuana distribution conspiracy was said to have been going on.[5] These instances were overt acts tying both Michael and Julie Lawrence to the conspiracy and constituted direct evidence of the existence and scope of the conspiracy. The threshold requirement of admissibility was clearly met in this case.
 
 
 27
 Turning to the second phase of the inquiry, the defendants allege that the evidence was more unduly prejudicial than probative and should thus have been excluded pursuant to Rule 403. We will reverse a determination to the contrary only if we find an abuse of discretion on the part of the trial court. United States v. Mills, 1 F.3d 414, 418 (6th Cir.1993). The evidence in question here connected both Julie and Michael Lawrence to the conspiracy, and the evidence related to conduct similar to the offense conduct. It was highly probative of matters in dispute. Although the material was obviously harmful to the defense, we find no abuse of discretion in the court's conclusion that the probative value of the evidence outweighed any risk of unfair prejudice.
 
 C. Introduction of the Videotape
 
 28
 Emogene Lawrence argues that the district court erred in permitting the government to introduce the videotape of the search of her home. Because it showed that she owned two guns, she argues, this evidence was irrelevant and highly prejudicial. Although Julie Lawrence sought to exclude the videotape in a motion in limine, none of the defendants raised a timely objection to the introduction of the tape at the trial. Our review, therefore, is limited to the question whether there was plain error. United States v. Busacca, 863 F.2d 433, 435 (6th Cir.1988), cert. denied, 490 U.S. 1005 (1989). A plain error is defined as "an egregious error, one that directly leads to a miscarriage of justice." Id.
 
 
 29
 The defendant was not charged with any gun violation, and the officers who searched the home testified that neither gun was loaded. In addition, they testified that the guns had not been used in connection to the drug transaction. Given this curative testimony, and given that the tape and the guns did not play a prominent role in the trial, we cannot say that the introduction of the videotape was an egregious error, if it was error at all. It is certainly not a ground for reversal.
 
 III.
 
 30
 Each of the defendants contends that the district court erred in applying the Sentencing Guidelines. We shall address each defendant's arguments separately.
 
 A. Emogene Lawrence
 1. Acceptance of Responsibility
 
 31
 Emogene Lawrence contends that the district court erred in denying her a two-level offense level reduction to account for her acceptance of responsibility. U.S.S.G. Sec. 3E1.1(a) permits such a reduction when a defendant "clearly demonstrates acceptance of responsibility" for the offense. The defendant bears the burden of proving acceptance of responsibility by a preponderance of the evidence. United States v. Williams, 940 F.2d 176, 181 (6th Cir.), cert. denied, 112 S.Ct. 666 (1991). The district court's finding that Mrs. Lawrence did not accept responsibility for her offense is one of fact, and it will not be disturbed unless clearly erroneous. Id.
 
 
 32
 The record suggests that Emogene Lawrence has never been forthright about her criminal activity. In her post-arrest statements to Agent James L. Harcum she initially denied ever having sold marijuana to Randy Brazier prior to January of 1992. After some prodding from Agent Harcum, she eventually admitted that she had sold him marijuana before that time, but she had never admitted the full extent of her transactions. Moreover, Mrs. Lawrence continues to deny that she used her granddaughter as a lookout.
 
 
 33
 The adjustment for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. Sec. 3E1.1, comment. n. 2. Mrs. Lawrence was such a defendant, except that she failed to express remorse or regret even after her conviction. The denial of the reduction was clearly permissible under the circumstances.[6]
 
 2. Age and Physical Condition
 
 34
 Emogene Lawrence also contends that the district court abused its discretion in imposing a sentence of imprisonment for 135 months, the maximum sentence within her guideline range. She argues that because of her age and medical condition, the court should have imposed a sentence at or below the bottom of the guideline range.
 
 
 35
 "A district court's refusal to depart downward from a sentence within the properly computed guideline range is not appealable." United States v. Morgan, 986 F.2d 151, 152 (6th Cir.1993). Even if it were appealable, we would find no error here.
 
 B. Michael Lawrence
 
 36
 Michael Lawrence argues that the district court erred in finding that he was not entitled to a reduction in his offense level for playing a "minor" or a "minimal" role in the offense. See U.S.S.G. Sec. 3B1.2(a) and (b). To establish that he was entitled to a reduction, Michael Lawrence was required to show, by a preponderance of evidence, that he played a role that made him "substantially less culpable than the average participant" in the offense conduct. U.S.S.G. Sec. 3B1.2, comment (bckgd).
 
 
 37
 The district court's factual determinations in sentencing are reviewed under the clearly erroneous standard. 18 U.S.C. Sec. 3742(e); United States v. Williams, 962 F.2d 1218, 1226 (6th Cir.), cert. denied, 113 S.Ct. 264 (1992). This court will not upset the district court's findings of fact unless we are firmly convinced that an error has been made. The legal conclusion that the facts warrant or do not warrant application of a particular guideline provision is subject to de novo review. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991). Applying these standards, we find no error in Michael Lawrence's sentencing.
 
 
 38
 The record establishes that Michael Lawrence was present during the drug deal and that he participated in the preliminaries of the transaction. He assured Timothy Poss that the transaction was "safe;" he followed Brazier and Officer Elmore to the restaurant to make sure the family was not being "set up;" he verified that Brazier and Officer Elmore had brought the money for the purchase; he led Officer Elmore to the basement where the transaction was to occur; and he fled when the police stormed the house.
 
 
 39
 All of this information was detailed in the presentence investigation report. Michael Lawrence did not object to any of the factual findings in the report, and none of these findings is clearly erroneous. His actions on the day of the sale, particularly his attempt to avoid capture, suggest that Mr. Lawrence was well-aware of the criminal nature of the transaction and of his role in it. The record does not support Michael Lawrence's contention that he is entitled to application of Sec. 3B1.2(a) or (b).
 
 C. Julie Lawrence
 
 40
 Julie Lawrence also argues that the district court erred in denying her a sentence reduction pursuant to U.S.S.G. Sec. 3B1.2(b) to account for her "minor" role in the offense. The record shows, however, that Julie Lawrence helped her mother obtain the marijuana by providing assurances to the supplier, that she encouraged the undercover buyers to complete the sale, and that she stood to receive some of the benefit of the sale. Although she was not in the house during the sale, she was in the vicinity the entire day and she checked the surrounding area for police before the transaction was to occur. Ms. Lawrence appears to have been fully aware of the goings-on in her mother's house that day and in the preceding months, and she knew she was facilitating the offense. In light of these facts, we cannot say that the district court's determination that she was more than a minor participant was erroneous.
 
 
 41
 Julie Lawrence also argues that the district court erred in adjusting her offense level upward, pursuant to U.S.S.G. Sec. 3C1.1, for obstruction of justice. Sec. 3C1.1 provides as follows:
 
 
 42
 "If the defendant wilfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels."
 
 
 43
 The district court applied this section based upon Julie's conduct prior to and during her arrest, most notably her attempt to take the sheriff's gun and her violent behavior while in transit to the sheriff's office following her arrest.
 
 
 44
 Ms. Lawrence does not deny that these events occurred, but she argues that this section is inapplicable to her conduct. In this connection she cites Sec. 3C1.1 application notes 3 and 4, which provide non-exhaustive lists of the type of conduct to which Sec. 3C1.1 does and does not apply. Application note 3 gives several examples of conduct warranting application of this section; most involve things such as perjury, destruction or concealment of evidence, and intimidation or bribery of witnesses or jurors. U.S.S.G. Sec. 3C1.1, comment n. 3. Subsection (e) of application note 3 states that the enhancement may apply when the defendant escapes or attempts to escape from custody "before trial or sentencing," or when the defendant fails to appear in court. Id. n. 3(e).
 
 
 45
 Application note 4 provides a non-exhaustive list of the actions to which Sec. 3C1.1 does not apply. Ms. Lawrence relies particularly on subsection (d), which indicates that the enhancement provision does not apply to "avoiding or fleeing from arrest." We think, however, that Ms. Lawrence's behavior in grabbing for the officer's gun was different from a simple attempt to evade arrest. It was reasonable for the district court to conclude that Ms. Lawrence's attempt to grab the officer's gun represented an attempt to hinder the investigation and prosecution of her offense. We find no error in the district court's application of Sec. 3C1.1.
 
 
 46
 AFFIRMED.
 
 
 
 [1]
 Poss testified at trial that he stole the marijuana after overhearing people talking about where they had hidden large quantities of the product. He found 21 pounds of it in that location
 
 
 [2]
 Although Emogene had agreed to sell the marijuana to Randy Brazier for $1,200 per pound (or a total of $24,000 for the 20 pounds), it was understood that the ultimate purchaser of the marijuana would pay Brazier a total of $28,000. Brazier was to keep $2,000 of the profit for himself; the other $2,000 would be turned over to Emogene to satisfy Brazier's pre-existing debt
 
 
 [3]
 18 U.S.C. Sec. 2(a) provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."
 
 
 [4]
 Given the nature of the prior acts evidence, we take it that the district court's finding that this evidence was probative of the defendants' "motive" refers to their intent or immediate motive in sending her outside. Evidence of prior acts ordinarily is admissible to show intent where the defendant's intent must be proved at trial, but such evidence may be inadmissible in certain instances where the defendant denies the actus reus of a crime. Where intent can be inferred from commission of the act itself, intent is not genuinely in dispute and the government is not permitted to introduce "other bad acts" evidence to prove it. See United States v. Ring, 513 F.2d 1001, 1008 (6th Cir.1975). Although the defendants denied that they committed the acts charged in count four of the indictment, we think that their intent was a genuinely contested issue because an intent to use the child to facilitate the drug offense would not necessarily follow from the act of sending her outside. A juror might presume, for instance, that the child was sent outside to protect her or to shelter her from knowledge of criminal wrongdoing. We think, therefore, that it was proper for the prosecution to offer evidence of the defendants' prior use of Cindy Lawrence as a lookout in order to prove their intent in sending her out of the house on the day of their arrest
 
 
 [5]
 Although the possession count in the indictment related to the defendants' actions on January 8, the conspiracy count alleged that the conspiracy began in the summer of 1991 and continued until the defendants' arrests on January 8, 1992
 
 
 [6]
 Although the district court did not rely on this fact, we also note that there is evidence in the record that Mrs. Lawrence continued her marijuana distribution activities while released on bond. A defendant is not entitled to credit for acceptance of responsibility in such a situation. United States v. Reed, 951 F.2d 97, 100 (6th Cir.1991), cert. denied, 112 S.Ct. 1700 (1992)